

1  MICHAEL J. STEINER (State Bar No. 112079)
   JOSHUA E. WHITEHAIR (State Bar No. 244900)
2  SEVERSON & WERSON
   A Professional Corporation
3  One Embarcadero Center, Suite 2600
   San Francisco, CA 94111
4  Telephone: (415) 398-3344
   Facsimile: (415) 956-0439
5
   Attorneys for Defendant
6  WELLS FARGO BANK, N.A.
7

**FILED**

APR 1 9 2010

E-filing

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  GUSTAVO REYES and MARIA TERESA     Case No.: **CV 10 1667**
    GUERRERO, husband and wife, individually
12  and on behalf of others similarly situated,   **NOTICE OF REMOVAL**

13            Plaintiffs,

14       vs.                                          **JCS**

15  WELLS FARGO BANK, N.A., a national
    bank; and DOES 1-100, inclusive,
16
              Defendants.
17

18       TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

19  NORTHERN DISTRICT OF CALIFORNIA:

20       Defendant Wells Fargo Bank, N.A. ("Wells Fargo") hereby removes to this Court the

21  State court action described below.

22            I.       THE REMOVED ACTION

23       1.      On March 11, 2010, plaintiffs Gustavo Reyes and Maria Teresa ("Plaintiffs")

24  commenced a action entitled *Gustavo Reyes, et al. v. Wells Fargo Bank, N.A. and Does 1 through*

25  *100 inclusive*, in the Superior Court of the State of California, in the County of Alameda, case

26  number RG10503606.

27       2.      Wells Fargo was served with a copy of the Complaint and Summons from said

28  State court on March 18, 2010.

07725/0128/804817.1                                          Notice of Removal
                                                                   Case No.:

3.      Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon Wells Fargo in the action are attached hereto as **Exhibit A**.

## II.      BASIS FOR REMOVAL

### A.      Diversity Jurisdiction

4.      At the time of filing the Class Action Complaint (the "Complaint"), at the time of removal, and at all intervening times, Plaintiffs were and continue to be citizens of the State of California. (Compl. ¶ 2.)

5.      Wells Fargo is a national banking association with its main office, as designated in its articles of association, in the State of South Dakota.  A copy of Wells Fargo's articles of association, designating the State of South Dakota as the location of its main office, is attached hereto as **Exhibit B**.  Consequently, at the time of filing the complaint, at the time of removal, and at all intervening times, Wells Fargo was and continues to be a citizen of the State of South Dakota. *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006) (holding that a national bank is a citizen of the state where its main office, as designated in its articles of association, is located); *see* 28 U.S.C. § 1348 ("All national banking associations shall . . . be deemed citizens of the States in which they are respectively located.").

6.      Complete diversity of citizenship exists between Plaintiffs and Defendants.

### B.      Amount In Controversy

7.      The claims asserted in the Complaint arise from Wells Fargo's alleged practice of purchasing "charging its distressed California residential mortgage customers for ·written forbearance agreements, promising to consider them for loan modification, then proceeding with foreclosure against them anyway in violation of the agreements. (Compl. ¶ 1.)  In Plaintiffs' case, this alleged practice purportedly caused them to pay four monthly forbearance payments of $1307.57 under a "Special Forbearance Agreement" in exchange for Wells Fargo agreeing to suspend the non-judicial foreclosure proceedings and consider them for a loan modification. (*Id.* ¶¶ 15-16.)  Despite allegedly making those payments, Wells Fargo "caused the Property to be sold by trustee's sale." (*Id.* ¶ 17.)

- 2 -

8.      Based on the above allegations, Plaintiffs asserts four "causes of action" – breach of contract, restitution (unjust enrichment), unfair competition, declaratory relief and injunctive relief.   Plaintiffs' third cause of action for unfair competition in violation of Business and Professions Code Sections 17200, *et seq.* (California's Unfair Competition Law, hereinafter referred to as the "UCL") alleges "fraudulent," "unlawful" and "unfair" business practices concerning the "Special Forebearance Agreement" as well as purported violations of California Civil Code § 2923.5 and Code of Civil Procedure §§ 580d and 726.  (*Id.* ¶¶ 36-37.)

9.      Although Plaintiffs fails to plead a specific amount in controversy, they assert a right to relief in the form of an injunction, damages, restitution, and reasonable attorneys' fees and costs of litigation.  (Compl., Prayer for Relief, pp. 9-10 ¶¶ A-G.)

10.     Plaintiffs' request for attorneys' fees has two bases: (1) Paragraph 22 of their Deed of Trust "as rendered mutual by Civil Code § 1717; and (2) "Section 1021.5 of the Code of Civil Procedure," which states that "[u]pon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest."  (Compl., Prayer for Relief, p. 10 ¶F.)

11.     Plaintiffs asserts her claims and right to relief on behalf of a class of:

All California residential mortgage borrowers who made or tendered each of their monthly payments to Wells Fargo pursuant to the Special Forbearance Agreements (or similar agreements) during the four years proceeding the filing of this action (the "Class").

**Foreclosure Sub-Class**
All members of the Class who were subject to the recordation of the NOS and/or foreclosure sale during the pendency of the forbearance period set forth in their Special Forbearance Agreements (or similar agreements).

**Loan Modification Sub-Class**
All members of the Class who were not considered for loan modifications after completion of the forbearance period described in their Special Forbearance Agreements (or similar agreements).

12.     Wells Fargo has entered into numerous forbearance agreements with residential mortgage borrowers of California  since March 11, 2006, the date four years prior to the filing of the Complaint in this action.  Due to the vagueness and inaccuracies of the allegations of the Complaint, however, Wells Fargo cannot speculate as the amount of damages allegedly sustained

- 3 -

Notice of Removal
Case No.:

by Plaintiffs or the putative class under the claims alleged.   Nonetheless, based solely on Plaintiffs' demand for attorneys' fees, it is clear that the amount in controversy in this action exceeds $75,000.00.

13.   Statutory attorneys' fees may be considered along with claims for damages in calculating the amount in controversy in this action. *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Section 1021.5 of the California Code of Civil Procedure authorizes awards of attorneys' fees to Plaintiffs' asserting the types of claims pleaded in the Complaint.

14.   As dictated by Section 1367 of Title 28 of the United States Code, as that section has been interpreted by the United States Supreme Court, if the potential attorneys' fee award Plaintiffs could receive if they prevail on any of their individual claims exceeds $75,000.00, the amount placed in controversy by the Complaint exceeds the jurisdictional amount and this Court has original jurisdiction over that claim and supplemental jurisdiction over all other claims asserted in the Complaint, including the causes of action and claims for relief asserted on behalf of the putative class.  28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); *Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 559-60 (2005) ("When the well-pleaded complaint contains at least one claim that satisfies the amount-in-controversy requirement, and there are no other relevant jurisdictional defects, the district court, beyond all question, has original jurisdiction over that claim."; "The natural, indeed the necessary, inference is that § 1367 confers supplemental jurisdiction over claims by . . . Rule 23 plaintiffs.").

15.   At Wells Fargo's counsel's request, William L. Stern, a 29 year veteran of the California bar with substantial experience litigating and researching UCL claims accompanied by requests for attorneys fees under Section 1025.1 of the California Code of Civil procedure, has opined on the usual and customary amount of attorneys' fees awarded by California state and

- 4 -

1 | federal courts to plaintiffs who have successfully prosecuted such claims as individuals or private
2 | attorneys general. The Declaration of William L Stern in Support of Notice of Removal ("Stern
3 | Decl.") has been filed contemporaneously herewith.

4 |        16.     Based on his experience and research, Mr. Stern concludes that, in California, "a
5 | plaintiff who prevails on [a UCL claim], individually or as a private attorney general, and
6 | subsequently moves for attorneys' fees under Section 1021.5 of the Code of Civil Procedure will
7 | *virtually always* receive a fee award in excess of $75,000.00." (Stern Decl. ¶ 8, emphasis added.)
8 | In support of that conclusion, Mr. Stern cites to fifteen fee award decisions in cases involving
9 | claims analogous to those asserted by Plaintiffs in this action, but brought by plaintiffs, not as
10 | class representatives, but rather as individuals or private attorneys general. (*Id.* ¶ 9.) Of the
11 | sixteen fee awards detailed in the decisions cited, thirteen (or 87.5%) exceeded $75,000.00, with
12 | an average fee award of $2,258,680.54, or $395,634.90 if the two highest awards are excluded
    | from the calculation. (*Id.* ¶ 10.)

13 |        17.     Significantly, in *Chabner v. United of Omaha Life Ins. Co.*, No. C-95-0447, 1999
14 | WL 33227443 (N.D. Cal Oct. 12, 1999) (Stern Decl., Ex. 2), a putative class action in which class
15 | certification was denied, the plaintiff proceeded on his individual claims, including claims
16 | brought under the California Insurance Code and the UCL, and eventually obtained an award of
17 | $480,791.00 in attorneys' fees, in part as a prevailing party under Section 1021.5 of the California
18 | Code of Civil Procedure. Excluded from that award were all fees incurred on class certification
19 | work. *Chabner*, 1999 WL 33227443 at *7 n.4.

20 |        18.     Decisions and awards in similar cases have been accepted as evidence of the
21 | amount in controversy in removal proceedings. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980
22 | (9th Cir. 2005) (stating that the district court could consider emotional distress damage awards in
23 | similar cases in determining the amount in controversy); *Beaver v. NPC Int'l, Inc.*, 451 F. Supp.
24 | 2d 1196, 1198-99 (D. Or. 2006) (holding that attorneys' fee awards in similar cases were
25 | probative of the amount in controversy); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033
26 | (N.D. Cal. 2002) (finding jury verdicts on punitive damages in analogous cases could be used as
27 | evidence of probable amount in controversy).

28 |

07725/0128/804817.1

Notice of Removal
Case No.:

19.    Based on the conclusions of Mr. Stern, which are based, in part, on a review of attorneys' fee awards in connection with claims analogous to those asserted by Plaintiffs in this action, if successful, Plaintiffs will likely receive a fee award in excess of $75,000.00 under Section 1021.5 of the California Code of Civil Procedure, as a prevailing party on their UCL claim, even assuming that class certification is denied and they are forced to proceed individually.

20.    Consequently, the requirements of 28 U.S.C. § 1332(a)(1) are satisfied.

WHEREFORE, Wells Fargo prays that this action be removed to this Court for final determination.

DATED: April 19, 2010

SEVERSON & WERSON
A Professional Corporation


By: _____
           Joshua E. Whitehair

Attorneys for Defendant
WELLS FARGO BANK, N.A.

- 6 -

Notice of Removal
Case No.:

# EXHIBIT A

*8288463*

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
David Pivtorak (SB# 255943)
LAW OFFICE OF DAVID PIVTORAK
166 Santa Clara Ave.
Oakland, CA 94610

TELEPHONE NO.: 510.658.2500    FAX NO.:

**ATTORNEY FOR** *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Alameda
STREET ADDRESS: 1225 Fallon St.
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME: Rene C. Davidson Courthouse

**FILED**
ALAMEDA COUNTY

MAR 1 1 2010

CLERK OF THE SUPERIOR COURT
Barbara R. Watts

**CASE NAME:**
REYES v. WELLS FARGO BANK, N.A.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: RG10503606 |
|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [✓] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[✓] punitive
4. Number of causes of action *(specify):* 5
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: 03-11-2010
David Pivtorak
_____
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**EXHIBIT**
_A_

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

F. ADDENDUM TO CIVIL CASE COVER SHEET

*Unified Rules of the Superior Court of California, County of Alameda*

| Short Title: Reyes v. Wells Fargo Bank, N.A. | Case Number: |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

[X] Oakland, Rene C. Davidson Alameda County Courthouse (446)    [  ] Hayward Hall of Justice  (447)    [  ] Pleasanton, Gale-Schenone Hall of Justice (448)

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | |
|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | Is this an uninsured motorist case?  [ ] yes  [ ] no | |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [ ] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial  Is the deft. in possession |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential  of the property? |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs  [ ] Yes  [ ] No |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes  [ ] No | |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [X] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

202-19 (5/1/00)

A-13

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WELLS FARGO BANK, N.A., a national bank; and DOES 1-100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

GUSTAVO REYES and MARIA TERESA GUERRERO, husband and wife, individually, and on behalf of others similarly situated

ENDORSED
FILED
ALAMEDA COUNTY

MAR 1 1 2010

CLERK OF THE SUPERIOR COURT
By BARBARA LAMOTTE
                              Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Rene C. Davidson Courthouse | CASE NUMBER: *(Número del Caso):* RG/10503606 |
|---|---|

1225 Fallon St.
Oakland, CA 94612

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David Pivtorak, 166 Santa Clara Ave., Oakland, CA 94610, 510.658.2500

| DATE: MAR 1 1 2010 *(Fecha)* | Clerk, by PAT S. SWEETEN *(Secretario)* | , Deputy BARBARA LAMOTTE *(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):*  WELLS FARGO BANK, N.A., a national bank

under: ☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☒ by personal delivery on (date): 3/18/10

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Page 1 of 1 Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com



**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

CZG / ALL
Transmittal Number: 7490127
Date Processed: 03/18/2010

| | |
|---|---|
| Primary Contact: | Diana Benda - WFB<br>Wells Fargo, Inc.<br>800 Walnut Street<br>Des Moines, IA 50309 |

| | |
|---|---|
| Entity: | Wells Fargo Bank, National Association<br>Entity ID Number 2013649 |
| Entity Served: | Wells Fargo Bank, N.A. |
| Title of Action: | Gustavo Reyes vs. Wells Fargo Bank, N.A. |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court: | Alameda County Superior Court, California |
| Case Number: | RG10503606 |
| Jurisdiction Served: | California |
| Date Served on CSC: | 03/18/2010 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | David Pivtorak<br>510-868-2626 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

1 | Peter B. Fredman (Cal. State Bar No. 189097)
**LAW OFFICE OF PETER FREDMAN**
2 | 125 University Ave, Suite 102
Berkeley, CA 94710
3 | Telephone: (510) 868-2626
Facsimile: (510) 868-2627
4 | peter@peterfredmanlaw.com

5 | David Pivtorak (State Bar No. 255943)
**LAW OFFICE OF DAVID PIVTORAK**
6 | 166 Santa Clara Ave. Suite 205
Oakland, California 94610
7 | Telephone (510) 658-2500
Facsimile: (877) 748-4529
8 | pivtoraklaw@gmail.com

9 | Attorney for Plaintiffs,
GUSTAVO REYES and MARIA TERESA GUERRERO,
10 | husband and wife, individually, and on behalf of others similarly situated

ENDORSED
FILED
ALAMEDA COUNTY

MAR 1 1 2010

CLERK OF THE SUPERIOR COURT
By BARBARA LAMOTTE
Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALAMEDA**

**UNLIMITED JURISDICTION**

GUSTAVO REYES and MARIA TERESA GUERRERO, husband and wife, individually, and on behalf of others similarly situated,

Plaintiffs,

v.

WELLS FARGO BANK, N.A., a national bank; and DOES 1-100, inclusive,

Defendants.

Case No. RG10503606

**CLASS ACTION**

COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF:

(1) BREACH OF CONTRACT

(2) RESTITUTION (UNJUST ENRICHMENT)

(3) UNFAIR COMPETITION

(4) DECLARATORY RELIEF

(5) INJUNCTIVE RELIEF

**JURY TRIAL DEMANDED**

1
Class Action Complaint

1    Plaintiffs make the following allegations on information and belief, except as to those

2  allegations specifically pertaining to Plaintiffs, which are based on their personal knowledge:

3

4                                **INTRODUCTION**

5        1.     This class action lawsuit seeks to address and remedy Wells Fargo Home

6  Mortgage's practice of charging its distressed California residential mortgage customers for

7  written forbearance agreements, promising to consider them for loan modification, then

8  proceeding with foreclosure against them anyway in violation of the agreements.

9

10                                  **PARTIES**

11       2.     Plaintiffs, Gustavo Reyes and Maria Teresa Guerrero ("Plaintiffs"), are residents

12  of Alameda County, California at the real property located at 1321 Grove Way, Hayward, CA

13  94541 (the "Property").

14       3.     Defendant, Wells Fargo Home Mortgage, is a division of Wells Fargo Bank, N.A.

15  ("Wells Fargo"), which does business throughout California and has its principal place of

16  business in San Francisco, California.

17       4.     Plaintiffs are not aware of the true names and capacities of the defendants sued as

18  Does 1-100, inclusive, and therefore sue these defendants by such fictitious names. Each of

19  these fictitiously named defendants is responsible in some manner for the activities alleged in

20  this Complaint. Plaintiffs will amend this Complaint to add the true names of the fictitiously

21  named defendants once they are discovered.

22       5.     Plaintiffs allege on information and belief that at all times relevant hereto each of

23  the defendants, including each DOE, was the agent, principle, servant, master, employee,

24  employer, joint-venturer, partner, successor-in-interest, and/or co-conspirator of each other

25  defendant and was at all said times acting in the full course and scope of said agency, service,

26  employment, joint venture, concert of action, partnership, successorship, or conspiracy, and that

27  each defendant committed the acts, caused or directed others to commit the acts, or permitted

28  others to commit the acts alleged in this Complaint.

---

                                    2
                          Class Action Complaint

**JURISDICTION AND VENUE**

6.     This Court has jurisdiction over this action pursuant to California Constitution Article VI section 10, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other trial courts."

7.     Venue is proper in this Court because the Property is located within the jurisdictional region of this Court and the foreclosure sale of the Property took place on the steps of this Courthouse.

**FACTS**

8.     Plaintiffs purchased the Property in November, 2003 for approximately $336,000 with a first mortgage for $268,000.

9.     On or about September 16, 2005, Wells Fargo refinanced the Property, providing Plaintiffs with Wells Fargo Loan No. xxxxxxxxx0713 in the amount of $452,000, and taking a deed of trust (DOT) as security.  The DOT is attached as Exhibit A.

10.     Plaintiffs used the money the received from the refinance of the property to make improvements on the Property.  They paid Wells Fargo on time every month to the best of their ability.

11.     By June of 2009, however, the value of the Property had plummeted to less than half of the subject mortgage, and Plaintiffs had suffered economic hardships that depleted their savings and prevented them from making full mortgage payments. They called Wells Fargo to request a loan modification due to insufficient income.  Wells Fargo immediately denied the request.

12.     On or about September 10, 2009, Wells Fargo recorded and served a Notice of Default And Election to Sell ("NOD") the Property pursuant to section 2924 *et seq* of the California Civil Code ("Section 2924"). The NOD is attached as Exhibit B.

---

3

Class Action Complaint

13.     By recording and serving the NOD, Wells Fargo elected to proceed with non-judicial foreclosure of the Property.  Under Section 2924, recordation of the NOD triggered a three month right-to-cure period before Wells Fargo could record a Notice of Trustee's Sale ("NOS") establishing a foreclosure sale date for the Property.  By filing the NOD on September 10th, Wells Fargo was perfecting a right to record the NOS on or about December 11th, and sell the Property on or about December 31, 2009.

14.     Plaintiffs continued to seek loan modification or other relief from Wells Fargo.

15.     On December 1, 2009, Wells Fargo offered Plaintiffs a forbearance agreement whereby, in exchange for monthly payments in the amount of $1307.57, defendant agreed to (a) suspend foreclosure activities for a three month period, and (b) consider Plaintiffs for loan modification.  The Special Forbearance Agreement ("Agreement") is attached as Exhibit C, and reads in relevant part as follows:

> We have good news about the above referenced loan. Our goal is simple.  We want to ensure you have every opportunity to retain your home.  Based on our telephone conversation and the financial information you provided, we would like to offer you a Special Forbearance Agreement ("Agreement").
> ***
> …This is … a trial period showing you can make regular monthly payments …
> ***
> Any installment received will be applied to the delinquent payments on the loan.
> ***
> If your loan is in foreclosure, we will instruct our foreclosure counsel to suspend foreclosure proceedings once the initial deposit has been received, and to continue to suspend the action as long as you keep to the terms of the Agreement.
> ***
> This Agreement temporarily accepts reduced installments … Upon successful completion of the Agreement … [a]ny outstanding payments and fees will be reviewed for a loan modification. …

Exhibit C, (emphasis added).

16.     Plaintiffs duly made the monthly payments as required by the Agreement, and Wells Fargo accepted and cashed their checks.   Specifically, Plaintiffs paid the monthly

4

Class Action Complaint

1 | payment for December, 2009, January, 2010, February, 2010, and March, 2010 before learning
2 | they had been foreclosed on.

3       17.    Nevertheless, on December 11, 2009, Wells Fargo recorded the NOS, attached as
4 | Exhibit D, against the Property, and on February 19, 2010 caused the Property to be sold by
5 | trustee's sale (see Exhibit E).

6

7                                     **CLASS ALLEGATIONS**

8       18.    This action is brought pursuant California law and section 382 of the California
9 | Code of Civil Procedure by the individual named Plaintiffs on behalf of themselves and the
10 | following class:

11     **Class**
12     All California residential mortgage borrowers who made or tendered each of their monthly installment payments to Wells Fargo pursuant to the Special Forbearance Agreements (or similar agreements) during the four years
13     proceeding the filing of this action (the "Class").

14     **Foreclosure Sub-Class**
    All members of the Class who were subject to the recordation of an NOS and/or
15     foreclosure sale during the pendency of the forbearance period set forth in their Special Forbearance Agreements (or similar agreements).
16

17     **Loan Modification Sub-Class**
    All members of the Class who were not considered for loan modification after
18     completion of the forbearance period described in their Special Forbearance Agreements (or similar agreements).

19

20       19.    Plaintiffs do not know the exact size or identities of the proposed Class, since
21 | such information is in the control of defendants.  Plaintiffs believe and allege, however, that the
22 | Class encompasses thousands of residential mortgage borrowers who are geographically
23 | dispersed throughout California.  Therefore, the proposed class is so numerous that joinder of all
24 | members is impracticable.

25       20.    Common questions of fact and law predominate over any questions affecting only
26 | individual members including, but not limited to, the following:

27     a.  whether the Special Forbearance Agreements were a valid and binding agreement;

28

b.  whether the terms of the Special Forbearance Agreements (i) prevented Wells Fargo from recordation of an NOS and/or causing foreclosure sale during the pendency of the forbearance period described in the agreement and/or (ii) required Wells Fargo to consider members of the Class for loan modification after completion of the forbearance period;

c.  whether Wells Fargo's conduct with respect to Class members in connection with the Special Forbearance Agreement constituted fraudulent, unfair or unlawful business practices within the meaning of the UCL; and

d.  whether declaratory and/or injunctive relief should issue.

21.   This is a matter of important public policy because foreclosure avoidance, where possible, and the fair treatment of distressed borrowers are state and national policy priorities.

22.   Plaintiffs' claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.

23.   Plaintiffs will fairly and adequately represent the interests of the Class. They are committed to the vigorous prosecution of the Class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class action and foreclosure claims.

24.   A class action is superior to other methods for the fast and efficient adjudication of this controversy and to avoid the risk of disparate and inconsistent rulings throughout the state. A class action regarding the issues in this case does not create any problems of manageability.

25.   In the alternative, the defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

26.   The preceding paragraphs are incorporated by reference.

27.   Plaintiffs entered into an agreement with defendants whereby, in exchange for the specified monthly payments, defendants were required to suspend foreclosure activities for a

1   three month trial period and then consider plaintiffs for a loan modification upon their successful

2   completion of the forbearance program.

3          28.     Plaintiffs performed all their obligations under the agreement except to the extent

4   that they were excused from performance.

5          29.     Defendants breached the agreement.

6          30.     Plaintiffs were harmed as a result of the breach.

7          WHEREFORE, Plaintiffs pray for judgment and relief as set forth below.

8

9                           **SECOND CAUSE OF ACTION**
                            **(Restitution – Unjust Enrichment)**

10

11         31.     The preceding paragraphs are incorporated by reference.

12         32.     Defendants unjustly received and retained benefits, the interim forbearance

13   payments paid by Plaintiffs, who are therefore entitled to restitution.

14         33.     Defendants, and each of them, are guilty of oppression, fraud and malice.

15   Plaintiffs allege that the corporate, employer, and principal defendants had advance knowledge

16   of the unfitness of their employees and agents but employed and utilized them anyway with

17   conscious disregard of the rights of others.  Plaintiffs further allege that the wrongful acts of the

18   individuals and entities that had direct contact with plaintiffs were authorized and/or ratified by

19   the other defendants.  Defendants are all therefore subject to the imposition of punitive damages

20   according to proof at trial. *See Ward v. Taggart* (1959) 51 Cal.2d 736, 742-743; *McLaughlin v.*

21   *National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1165.

22         WHEREFORE Plaintiffs pray for judgment and relief as set forth below.

23

24                            **THIRD CAUSE OF ACTION**
                 **(Unfair Competition – Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

25         34.     The preceding paragraphs are incorporated by reference.

26         35.     California's Unfair Competition Law (the "UCL") defines unfair competition to

27   include any "unlawful, unfair, or fraudulent" business act or practice. Cal. Bus. & Prof. Code §§

28   17200 *et seq.* Defendants' conduct constitutes unfair competition under the UCL.

7

---

Class Action Complaint

36.    Defendants engaged in "fraudulent" business practices because the Special

Forbearance Agreement was likely to mislead the public into believing that they would actually

receive forbearance, would not be subject to foreclosure activity during the pendency of the

forbearance period, and would be considered for a loan modification upon successful completion

of the forbearance program.

37.    Defendants engaged in "unlawful" and "unfair" business practices because they

violated the laws and underlying legislative policies designed to (a) prevent foreclosure, where

possible, by requiring mortgage holders to engage in honest foreclosure prevention efforts, and

to do so before recordation of a NOD (see Cal. Civil Code § 2923.5) (b) provide Californians

with anti-deficiency protections that prevent mortgage holders from seizing other assets or

monies of the borrowers after electing to sell the security in satisfaction of the mortgage debt

(see C.C.P. § 580d, § 726).

38.  Plaintiffs were injured in fact and lost money or property as a result of these

unlawful, unfair, and fraudulent business practices.

WHEREFORE, Plaintiffs pray for judgment and relief as set forth below.

## FOURTH CAUSE OF ACTION
### (Declaratory Relief)

39.    The preceding paragraphs are incorporated by reference.

40.    An actual controversy exists between Plaintiffs and defendants as to the proper

interpretation of the Special Forbearance Agreement, whether it is a binding contract, and the

rights and obligations of the parties under it, and whether defendants may rightfully retain

monies paid pursuant to the Agreements.

WHEREFORE, Plaintiffs pray for judgment and relief as set forth below.

## FIFTH CAUSE OF ACTION
### (Injunctive Relief)

41.    The preceding paragraphs are incorporated by reference.

8
Class Action Complaint

42.   Defendants continue to engage in practices that violate the aforementioned Agreements.  Therefore, in addition to the permanent relief sought herein, Plaintiffs seek a preliminary injunction prior to class certification pursuant to section 527(b) of the Code of Civil Procedure.

43.   A preliminary injunction should be issued because (a) the plaintiff class members will suffer irreparable injuries, including unlawful transfers of their home, (b) there is a better than "reasonable probability" that the plaintiffs will prevail on the merits, (c) in order to prevent a multiplicity of legal actions on behalf of each individual who is subject to these foreclosures, and (d) because there is a strong public interest involved in ensuring that unnecessary foreclosures are avoided and that homes are not taken by foreclosure without due process of law.

WHEREFORE, Plaintiffs pray for judgment and relief as set forth below.

## DEMAND FOR JURY TRIAL

44.   Plaintiffs request a jury trial on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment as follows:

A.   An order certifying the Plaintiff Class, appointing the named Plaintiffs as the representative of the Class, and appointing the law firms representing the named Plaintiffs as counsel for the Class;

B.   Money damages and/or restitution according to proof;

C.   Punitive damages according to proof;

D.   The issuance of injunctive orders enjoining and/or restricting defendants' operations as may be necessary to obtain compliance with the aforementioned Agreements and prevention of defendants from transferring rights in the unlawfully foreclosed properties;

9

Class Action Complaint

1      E.     Such additional orders or judgments as may be necessary to prevent these

2 practices and to restore to any person in interest any money or property which may have been

3 acquired by means of the UCL violations;

4      F.     Attorneys' fees, costs, and expenses pursuant to Section 1021.5 of the Code of

5 Civil Procedure and pursuant to Paragraph 22 of the standard DOT (Exhibit A) as rendered

6 mutual by Civil Code § 1717; and

7      G.     For such other and further relief as the Court may deem proper.

8

9

10 DATE: March 11, 2010               Respectfully Submitted,

11

12

13

14

15                    BY:

16                    DAVID PIVTORAK,
                     Attorney for Plaintiffs,

17                    GUSTAVO REYES and MARIA
                   TERESA GUERRERO

18

19

20

21

22

23

24

25

26

27

28

10
Class Action Complaint

# EXHIBIT A

RECORDING REQUESTED BY
CHICAGO TITLE CO.

Recording Requested By:

WELLS FARGO BANK, N.A.
ONE HOME CAMPUS-X2509-015
DES MOINES, IA 50328-

2005548270    12/28/2005 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:        78.00

Return To:
WELLS FARGO BANK, N.A.
FINAL DOCUMENTS X9999-01M
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121-1663

24  PGS

Prepared By:
JUNE PETERS
WELLS FARGO BANK, N.A.
ONE HOME CAMPUS-X2509-015
DES MOINES, IA 50328-

58701246093-1C

—————————————[Space Above This Line For Recording Data]—————————————

# DEED OF TRUST

0149340713

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are
defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used
in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated DECEMBER 16, 2005
together with all Riders to this document.
(B) "Borrower" is
MARIA TEREAS GUERRERO, AND GUSTAVO GUERRERO, WIFE AND HUSBAND,
AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a National Association
organized and existing under the laws of THE UNITED STATES OF AMERICA

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

FORM 3005    1/01
SCA01   Rev 11/09/00

Page 1 of 18    Initials:

58701246

Lender's address is
P. O. BOX 5137, DES MOINES, IA 50306-5137
Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is FIDELITY NATIONAL TITLE INSURANCE COMPANY

(E) "Note " is the promissory note signed by Borrower and dated DECEMBER 15, 2005.
The Note states that Borrower owes Lender FOUR HUNDRED FIFTY-TWO THOUSAND
AND NO/100                                                                    Dollars
(U.S. $ .....452,000.00..........) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than   JANUARY 1, 2036
(F) "Property" means the property that is described below under the heading "Transfer of
Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider           [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider   [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider      [ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an
electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers
initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be
amended from time to time, or any additional or successor legislation or regulation that

SCA02   Rev 12/15/00          Page 2 of 16          Initials:         FORM 3005   1/01

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | ALAMEDA | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.

SEE ATTACHED EXHIBIT A

Parcel ID Number: 428-0016-061                                    which currently has the address of
1321 GROVE WAY                                                                                        [Street]
HAYWARD                                                [City]  , California      94541      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

SCA03   Rev 11/09/00                    Page 3 of 16              Initials: ___        FORM 3005   1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

SCA04   Rev 11/09/00          Page 4 of 16        Initials: [signature]      FORM 3005   1/01

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination

SCA06   Rev 09/22/00                  Page 8 of 18        Initials: *IG* *LSh*   FORM 3005.   1/01

or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In

either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or

(c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

SCA09   Rev 11/13/00                    Page 9 of 18                  Initials:         FORM 3005   1/01

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exhange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

SCA10   Rev 09/22/00                    Page 10 of 18         Initials: _____    FORM 3005   1/01

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by

this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly

requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable·Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations· under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until ·such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach· and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or

SCA15    Rev 10/13/00                   Page 15 of 18          Initial _____     FORM 3005    1/01

before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

SCA16    Rev 09/22/00                    Page 16 of 18                  Initials _____ FORM 3005    1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____      _____ (Seal)
                                       GUSTAVO REYES                    Borrower

_____      _____ (Seal)
                                       MARIA TERESA GUERRERO            Borrower

SCA17   Rev 12/27/00          Page 17 of 18          Initials: _____ FORM 3005   1/01

State of California,                                        ss:

County of *Alameda*

On *December 19, 2005* before me, *ANDREA Gibson, Notary Public* personally appeared

**MARIA TEREAS GUERRERO, AND GUSTAVO GUERRERO, WIFE AND HUSBAND, AS JOINT TENANTS**

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that ~~he/she/they~~ executed the same ~~in his/her/their~~ authorized capacity(ies) and that by ~~his/her/their~~ signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

```
ANDREA GIBSON
Commission # 1370901
Notary Public — California
Alameda County
My Comm. Expires Aug 18, 2006
```

# ILLEGIBLE NOTARY SEAL DECLARATION

## (GOVERNMENT CODE 27361.7)

I declare under penalty of perjury that the notary seal on the document to which this statement is attached, reads as follows:

NAME OF NOTARY PUBLIC: _ANDREA Gibson_

COMMISSION NUMBER: _1370901_

NOTARY PUBLIC STATE: _CALIFORNIA_

COUNTY: _____

MY COMM. EXPIRES: _8-18-06_
                              (DATE)

SIGNATURE OF DECLARANT: _Theresa Compton_

PRINT NAME OF DECLARANT: _Theresa Compton_

CITY & STATE OF EXECUTION: _Castro Valley, California_

DATE SIGNED: _12/9/05_

THE ABOVE INFORMATION MUST BE LEGIBLE FOR SCANNING

# ADJUSTABLE RATE RIDER

**0148340713**

(1-Year Treasury Index-Rate Caps)
(Assumable after Initial Period)

This Adjustable Rate Rider is made this .16th day of DECEMBER, 2005..............., and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to ...................................................... WELLS FARGO BANK, N.A.................................................................................................. (the "Lender") of the same date and covering the property described in the Security Instrument and located at: .1321 GROVE WAY, HAYWARD, CA. 94541 .................................................................................
(Property Address)

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an Initial Interest Rate of .5.875..... %. The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The Interest Rate I will pay may change on the first day of JANUARY, 2011............................., and may change on that day every .12. th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

ADJUSTABLE RATE RIDER-1-Year Treasury Index (Assumable after Initial Period)

IO038A Rev. 08/03/05

**(C)  Calculation of Changes**                                                                      0149340713

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding
two and three-quarters percentage point(s) ( 2.750%)...............................to the Current Index.
The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded
amount will be the new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient
to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the
Maturity Date at my new interest rate in substantially equal payments. The result of this
calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than
_10.875_ % or less than _2.750_ % . Thereafter, my interest rate will never be increased or
decreased on any single Interest Change Date by more than <u>two percentage point(s) (  2.000%)</u>
from the rate interest I have been paying for the preceding _12_ months. My interest rate will never
be greater than _10.875_ %

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of
my new monthly payment beginning on the first monthly payment date after the Interest Change
Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the
amount of my monthly payment before the effective date of any change. The notice will include
information required by law to be given to me and also the title and telephone number of a
person who will answer any question I may have regarding the notice.

*page 2*                                                          1003BC Rev. 03/30/05

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER   0149340713
Section 18 of the Security Instrument is amended to read as follows:
1. UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION
A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower.

As used in this Section 18, "Interest in the Property" means any legal or beneficial
interest in the Property, including, but not limited to, those beneficial interests
transferred in a bond for deed, contract for deed, installment sales contract or
escrow agreement, the intent of which is the transfer of title by Borrower at a future date
to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or
transferred (or if Borrower is not a natural person and a beneficial interest in
Borrower is sold or transferred) without Lender's prior written consent, Lender may
require immediate payment in full of all sums secured by this Security Instrument.
However, this option shall not be exercised by Lender if such exercise is prohibited by
Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.
The notice shall provide a period of not less than 30 days from the date the notice is
given in accordance with Section 15 within which Borrower must pay all sums secured by
this Security Instrument. If Borrower fails to pay these sums prior to the expiration
of this period, Lender may invoke any remedies permitted by this Security Instrument
without further notice or demand on Borrower.

2. AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A
ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1.
ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY
INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

## Transfer of the Property or a Beneficial Interest in Borrower.

As used in this section 18, "Interest in the Property" means any legal or beneficial interest in the Property,
including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed,
installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a
future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is
not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior
written consent, Lender may require immediate payment in full of all sums secured by this Security
Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by
Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to
Lender information required by Lender to evaluate the intended transferee as if a new loan were being
made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired
by the loan assumption and that the risk of a breach of any covenant or agreement in this Security
Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to
Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption
agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and
agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated
under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of
acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given
in accordance with Section 15 within which Borrower must pay all sums secured by this Security
Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke
any remedies permitted by this Security Instrument without further notice or demand on Borrower.

0149340713

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
GUSTAVO REYES                    -Borrower

_____ (Seal)
MARIA TERESA GUERRERO            -Borrower

IO0393  Rev. 03/30/05

Escrow No.: 05-58701246-LC
Locate No.: CACTI7701-7701-5587-0058701246
Title No.: 05-58701246-PH

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF HAYWARD, COUNTY OF ALAMEDA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 6, Map of Wright Tract, filed February 23, 1904, in Map Book 19, Page 33, Alameda County Records.

APN: 428-0016-011

Exhibit Page – Legal(exhibit)(8-02)

# EXHIBIT B

2224884493

Recording Requested By:
FIRST AMERICAN TITLE INSURANCE COMPANY

*THIS COPY OF "NOTICE", THE ORIGINAL OF WHICH WAS FILED FOR RECORD ON 09/10/2009 IN THE OFFICE OF THE RECORDED OF ALAMEDA, CALIFORNIA IS SENT TO YOU IN AS MUCH AS AN EXAMINATION OF THE TITLE TO SAID TRUST PROPERTY SHOWS YOU MAY HAVE AN INTEREST IN THE TRUSTEE'S SALES PROCEEDINGS.*

When Recorded Mail To:
FIRST AMERICAN LOANSTAR TRUSTEE
SERVICES
P.O. BOX 961253
FORT WORTH, TX 76161

TS No.:         20099070818582
VA/FHA/PMI No.:
TSG No.:        4250050

Space above this line for Recorder's use only

Pursuant to California Code Section 2924c(b)(1) please be advised of the following:

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account into good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five days business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $12,724.09 as of 9/8/2009, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2);

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by you creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

WELLS FARGO HOME MORTGAGE
c/o FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
P.O. BOX 961253
FORT WORTH, TX 76161
817-699-6035



TS No.:      20099070818582
VA/FHA/PMI No.:

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That FIRST AMERICAN LOANSTAR TRUSTEE SERVICES As Agent for the current beneficiary under a Deed of Trust dated 12/16/2005, executed by:

**MARIA TEREAS GUERRERO,**
**GUSTAVO GUERRERO,**

as Trustor to secure certain obligations in favor of WELLS FARGO BANK, N.A. as Beneficiary, recorded 12/28/2005, (as Instrument No.) 2005548270, (in Book) , (Page) of Official Records in the Office of the Recorder of ALAMEDA County, CALIFORNIA describing land therein as:

AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST

said obligations including ONE NOTE FOR THE ORIGINAL sum of $452,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 6/1/2009 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: September 08, 2009

          FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
          AS AGENT FOR THE CURRENT BENEFICIARY
          By: FIRST AMERICAN TITLE INSURANCE COMPANY
          as Attorney-In-Fact

          By:     *ORIGINAL DOCUMENT SIGNED BY AUTHORIZED AGENT*
                                    (signature)

          Name:

          Title;

**FIRST AMERICAN LOANSTAR TRUSTEE SERVICES MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

**See Attached Declaration**

TS #:   2009907081 8582

# NOTICE OF DEFAULT DECLARATION
## PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

WELLS FARGO HOME MORTGAGE
3476 STATEVIEW BLVD
FORT MILL, SC  29715

Borrower:   MARIA TEREAS GUERRERO

Property Address:   1321  GROVE WAY
  HAYWARD. CA 94541

The undersigned mortgagee, beneficiary, or authorized agent (collectively, the "Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been met.  This Declaration is required for any residential owner occupied property in which the loan was originated between January 1, 2003 and December 31, 2007.  Non-owner occupied and vacant properties are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

* The Beneficiary has made contact with the borrower pursuant to CA Civil Code 2923(a)(2).  Contact with the borrower was made in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

* Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the Beneficiary.

* The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or authorized agent pursuant  to CA Civil Code 2923.5(h)(1).

* The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil Code 2923.5(h)(2)

* The borrower has filed for bankruptcy and the proceedings have not been finalized pursuant to CA Civil Code 2923.5(h)(3).

Dated: _____          *Original document executed by authorized agent*



FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
P.O. BOX 961253
FORT WORTH, TX 76161
Telephone:    817-699-6035
Telecopier:    817-699-1484

September 15, 2009

FILE NUMBER:    20099070818582
GUSTAVO GUERRERO
1321 GROVE WAY
HAYWARD, CA 94541

Re:    Loan No.:    0149340713
       TS #:       20099070818582

The current creditor to whom the debt is owed is:  HSBC Bank USA, National Association as Trustee for Wells
Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-AR10.   The loan is
serviced by WELLS FARGO HOME MORTGAGE.  FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
has been authorized by the Servicer/Creditor to initiate foreclosure proceedings in connection with the foreclosure of
a Deed of Trust associated with your real estate loan.

The amount of the debt as of the date of this Notice according to the records of our client is $460,946.68.   The
amount necessary to bring the loan into good standing and reinstate your mortgage is set forth in the enclosed Notice
of Default and Election to Sell Under Deed of Trust.  Because of interest, late charges, and other charges that may
vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown
above or in the enclosed Notice of Default and Election to Sell Under Deed of Trust, an adjustment may be necessary
after we receive your check, in which case we will inform you before depositing the check for collection.  For further
information, write the undersigned or call 817-699-6035.

Please be advised that FIRST AMERICAN LOANSTAR TRUSTEE SERVICES may be considered a debt collector
attempting to collect the above referenced debt.  Any information obtained from you may be used for that purpose.
Federal law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it.  If
you don't dispute it within that period, FIRST AMERICAN LOANSTAR TRUSTEE SERVICES will assume that
it's valid.  If you do dispute it - - by notifying FIRST AMERICAN LOANSTAR TRUSTEE SERVICES in writing to
that effect - - FIRST AMERICAN LOANSTAR TRUSTEE SERVICES will, as required by the law, obtain and mail
to you proof of the debt.  And if, within the same period, you request in writing the name and address of your
original creditor, if the original creditor is different from the current creditor, FIRST AMERICAN LOANSTAR
TRUSTEE SERVICES will furnish you with that information too.

The law does not require FIRST AMERICAN LOANSTAR TRUSTEE SERVICES to wait until the end of
thirty-day period before taking action to collect this debt.  If, however, you request proof of the debt or the name and
address of the original creditor within thirty days of receipt of this letter, the law requires LoanStar to suspend its
efforts (through litigation or otherwise) to collect the debt until FIRST AMERICAN LOANSTAR TRUSTEE
SERVICES mails the requested information to you.

The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require
that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m.  They may not
harass you by using threats of violence or arrest or by using obscene language.  Collectors may not use false or
misleading statements or call you at work if they know that you may not receive personal calls at work.  For the most
part, collectors may not tell another person, other than your attorney or spouse, about your debt.  Collectors may
contact another person to confirm your location or enforce a judgment.  For more information about debt collection
activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftd.gov.

Sincerely,

FIRST AMERICAN LOANSTAR TRUSTEE SERVICES

# EXHIBIT C



Return Mail Stations
P.O. Box 103~.
Des Moines, IA 50306-0368

December 01, 2009

012428 1 MB 0.382 4428/012428/012108 047 03 AC83CM LM004 708

Gustavo Reyes
Maria T Guerrero
1321 Grove Way
Hayward CA 94541-2139

Loan Number 708-0149340713
Due Date: 06-01-09

We have good news about the above referenced loan. Our goal is simple, We
want to ensure that you have every opportunity to retain your home. Based on
our telephone conversation and the financial information you provided, we
would like to offer you a Special Forbearance Agreement ("Agreement").

Currently, your loan is due for 6 installments, from June 01, 2009
through December 01, 2009. As agreed, you have promised to pay the amounts
stated within the Agreement, the terms and conditions of which are outlined
on page two. The Agreement must be signed and returned with the first
installment. This is not a waiver of the accrued or future payments that
become due, but a trial period showing you can make regular monthly
payments. Please note that investor approval is still pending.

Upon successful completion of the Agreement, your loan will not be
contractually current. Since the installments may be less than the total
amount due, you may still have outstanding payments and fees. Any
outstanding payments and fees will be reviewed for a loan modification. If
approved for a loan modification, based on investor guidelines, this will
satisfy the remaining past due payments on your loan and we will send you a
loan modification agreement. An additional contribution may be required.

Any installments received will be applied to the delinquent payments on the
loan. During this Agreement, installments are to be mailed to:
                Wells Fargo Home Mortgage
                3480 Stateview Blvd., MAC X7802-03B
                Fort Mill SC 29715

If your loan is in foreclosure, we will instruct our foreclosure counsel to
suspend foreclosure proceedings once the initial installment has been
received, and to continue to suspend the action as long as you keep to the
terms of the Agreement. Upon full reinstatement, we will instruct our
foreclosure counsel to dismiss foreclosure proceedings and report to the
credit bureaus accordingly.

During this period, we are requesting that you maintain contact with our
office in order to establish acceptable arrangements for bringing your loan
current. If you need additional assistance, please call us at
(800) 416-1472, Monday through Thursday, 8 AM to 11 PM; Friday, 8 AM to
9:30 PM; or Saturday, 9 AM to 1 PM, Eastern Time.

Sincerely,
Borrower Counseling Services                          LM004 025 81B



Wells Fargo Home Mortgage is a division of Wells Fargo Bank N A          012428/012108 AC83CM 4428 E

SPECIAL FORBEAR    E AGREEMENT - TERMS AND CONDIT    S

1. Currently, your loan is due for 6 installments, from June 01, 2009 through December 01, 2009. The indebtedness of the referenced loan is in default and in consideration of extending forbearance for a period of time, it is necessary that you indicate your understanding and acceptance of the terms of the forbearance agreement by immediately signing and returning this agreement.

2. This Agreement temporarily accepts reduced installments or maintains regular monthly payments as outlined in section 5 below. Upon successful completion of the Agreement, your loan will not be contractually current. Since the installments may be less than the total amount due you may still have outstanding payments and fees. Any outstanding payments and fees will be reviewed for a loan modification. If approved for a loan modification, based on investor guidelines, this will satisfy the remaining past due payments on your loan and we will send you a loan modification agreement. An additional contribution may be required.

3. The lender is under no obligation to enter into any further agreement, and this Agreement shall not constitute a waiver of the lender's right to insist upon strict performance in the future.

4. All of the provisions of the Note and Security Instrument, except as herein provided, shall remain in full force and effect. Any breach of any provision of this Agreement or non-compliance with this Agreement, shall render the Agreement null and void. The lender, in its sole discretion and without further notice to you, may terminate this Agreement. If the Agreement is terminated, the lender may institute foreclosure proceedings according to the terms of the Note and Security Instrument. In the event of foreclosure, you may incur additional expenses of attorney's fees and foreclosure costs.

5. Each payment must be remitted according to the schedule below.

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|------|------|------|------|------|
| 01 | 12/01/09 | 1,307.57 | 02 | 01/01/10 | 1,307.57 |
| 03 | 02/01/10 | 1,307.57 | | | |

6. There is no "grace period" allowance in this Agreement. All installments must be received on or before the agreed due date and made strictly in accordance with section 5 above. If any installment is not received on or before the respective due date, the Agreement will be void and the total delinquency, including fees, will be due immediately.

7. The total amount indicated on each installment must be remitted. In the event the total amount due of each payment is not received, the Agreement will be rendered null and void.

By signing this Agreement, I hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I may have. This includes text messages, at no cost to me, and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone.

Mortgagor            Date 12/05/09          Co-mortgagor          Date 12/05/09

Loan Number 708/0149340713

We are required by the Fair Debt Collection Practices Act to inform you that if your loan is currently delinquent or in default, as your loan servicer, we will be attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge, and the loan was not reaffirmed in the bankruptcy case, we will only exercise its right as against the property and is not attempting any act to collect the discharge debt from you personally.



Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

# EXHIBIT D

④

Requested and Prepared by:
FIRST AMERICAN TITLE INSURANCE
COMPANY

When Recorded Mail To:
FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
LLC
P.O. BOX 961253
FORT WORTH, TX 76161-0253          877-276-1894

TSG No.:        4250050
TS No.:         20099070818582
FHA/VA/PMI No.:



2009383585        12/11/2009 10:47 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:              15.00

2   PGS

Space above this line for Recorder's use only

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 12/16/2005.  UNLESS YOU TAKE ACTION TO PROTECT
YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE
PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On 1/4/2010 at 12:00 PM, FIRST AMERICAN LOANSTAR TRUSTEE SERVICES LLC, as duly appointed Trustee under and
pursuant to Deed of Trust recorded 12/28/2005, as Instrument No. 2005542270, in book , page , of Official Records in the office of the
County Recorder of ALAMEDA County, State of CALIFORNIA. Executed by:

    MARIA TEREAS GUERRERO,
    GUSTAVO GUERRERO,

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other
form of payment authorized by 2924h(b), (Payable at time of sale in lawful money of the United States) AT THE FALLON STREET
ENTRANCE TO THE COUNTY COURTHOUSE, 1225 FALLON STREET, OAKLAND, CA

All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State
described as:  AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST APN# 428 -0016-011

The street address and other common designation, if any, of the real property described above is purported to be:

                    1321  GROVE WAY, HAYWARD, CA 94541

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any,
shown herein.  Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in
said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by
said Deed of Trust.  The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable
estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $470,160.51. The beneficiary
under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale,
and a written Notice of Default and Election to Sell.  The undersigned caused said Notice of Default and Election to Sell to be
recorded in the County where the real property is located.

FIRST AMERICAN TITLE INSURANCE COMPANY          Date:   11/20/2009
First American LoanStar Trustee Services LLC
3 First American Way
Santa Ana, CA 92707

                                                                    ┌─────────────────────────────────────┐
                                                                    │ FIRST   AMERICAN   LOANSTAR  TRUSTEE │
                                                                    │ SERVICES LLC MAY BE ACTING AS A DEBT │
HANK DUONG              -- FOR TRUSTEE'S SALE                        │ COLLECTOR ATTEMPTING TO COLLECT A DEBT.│
INFORMATION PLEASE CALL 925-603-7342                                │ ANY INFORMATION OBTAINED MAY BE USED │
                                                                    │ FOR THAT PURPOSE.                    │
                                                                    └─────────────────────────────────────┘

                        See Attached Declaration

# CALIFORNIA DECLARATION

I, _Marsha Graham_ of Wells Fargo Home Mortgage, Inc., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

The Mortgage Loan Servicer has obtained from the Commissioner of Corporations a final or temporary order of exemption pursuant to California Civil Code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

And

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 does not apply.

Dated: _6-17-09_

By: _Marsha Graham_

Title: _Assistant Vice President_

Name: _Marsha Graham_

# EXHIBIT E

Recording Requested By:
First American LoanStar Trustee Services LLC
P.O. BOX 961253
FORT WORTH, TX 76161-0253

2010053721       03/01/2010 11:04 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:       24.00

Mail Tax Statements To:
Wells Fargo Home Mortgage
3476 Stateview Blvd
Fort Mill, SC 29715

4   PGS

APN NO.:        428-0016-011
TITLE ORDER NO.: 4250050
TS NO.:         20099070818582
LOAN TYPE:      Conventional

Space above this line for Recorder's use only

# TRUSTEE'S DEED UPON SALE

The undersigned grantor declares under penalty of perjury:
1) The grantee herein WAS the foreclosing beneficiary.
2) The amount of the unpaid debt together with costs was......$460,946.68
3) The amount paid by the grantee at the trustee sale was......$220,000.00
4) The documentary transfer tax is............  $   0.00
5) Said property is ~~INCORPORATED~~ / UNINCORPORATED

First American LoanStar Trustee Services LLC    (herein called Trustee), as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without warranty, express or implied to

HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-AR10

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of Alameda, State of CALIFORNIA, described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.

RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated 12/16/2005 and executed by,

MARIA TEREAS GUERRERO and GUSTAVO GUERRERO,

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY E.S.

Page 1 of 4

APN NO.: 428-0016-011
TITLE ORDER NO.: 4250050
TS NO.:        2009907081858.2
LOAN TYPE: Conventional

## TRUSTEE'S DEED UPON SALE

as Trustor, and recorded 11/28/2005, as Instrument No. 2005548270, in Book , Page , of Official Records of Alameda County, California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the County Recorder of said County.

All requirements of law and the applicable Deed of trust including, but not limited to those enumerated by Civil Code 2924, et. seq. regarding the mailing, publication, personal delivery and posting of the Notice of Default and Notice of Sale, as respectively appropriate, have been met.

Said property was sold by said Trustee at public auction on 02/19/2010 at the place named in the Notice of Sale, in the County of Alameda, California, in which the property is situated. Grantee, being the highest bidder at such sale, became the purchaser of said property and paid therefore to said trustee the amount of 220,000.00 in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

Date : **FEB 2 3 2010** _____

First American Loanstar Trustee Services

By 

DeeAnn Gregory, Trustee Officer

State of Texas
County of Tarrant

Before me Sherenetria Taylor Mosby , on this day personally appeared DeeAnn
Gregory, known to me to be the person whose name is subscribed to therefore going
instrument and acknowledged to me that this person executed the same for the purposes
and considerations therein expressed. **FEB 2 3 2010**

Given under my hand and seal of office this day of _____

Witness my hand and official seal

Signature : _____

**EXHIBIT A**

THE LAND IS SITUATED IN UNINCORPORATED AREA, COUNTY OF ALAMEDA STATE OF CALIFORNIA, AND DESCRIBED AS FOLLOWS:

LOT 6, MAP OF WRIGHT TRACT, FILED FEBRUARY 23, 1904, IN MAP BOOK 19, PAGE 33, ALAMEDA COUNTY RECORDS.

```
┌  Law Offices of David Pivtorak        ┐    ┌  Wells Fargo Bank, N.A., a national    ┐
   Attn: Pivtorak, David                         bank
   166 Santa Clara Ave
   Suite 205
└  Oakland, CA  94610                    ┘    └                                        ┘
```

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Reyes<br>      Plaintiff/Petitioner(s)<br>   VS. | No. <u>RG10503606</u> |
| Wells Fargo Bank, N.A.<br>      Defendant/Respondent(s)<br>    (Abbreviated Title) | NOTICE OF HEARING |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

Complex Determination Hearing<br>Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE: 04/22/2010  TIME:  03:00 PM  DEPARTMENT: 17
LOCATION:  Administration Building, Third Floor
      1221 Oak Street, Oakland

Case Management Conference:
DATE: 05/27/2010  TIME:  03:00 PM  DEPARTMENT: 17
LOCATION:  Administration Building, Third Floor
      1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 17 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6933.  Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 17.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be

scheduled for hearing in Department 17.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 17 by e-mail at Dept.17@alameda.courts.ca.gov or by phone at (510) 267-6933.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated:  03/22/2010                                   Executive Officer / Clerk of the Superior Court

                            By          *Cheryl Clark*

                                                                                    Digital
                                                        _____
                                                                    Deputy Clerk

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 03/22/2010.

                            By          *Cheryl Clark*

                                                                                    Digital
                                                        _____
                                                                    Deputy Clerk

# EXHIBIT B

# ARTICLES OF ASSOCIATION
## OF
## WELLS FARGO BANK, NATIONAL ASSOCIATION

(Effective as of February 20, 2004)

### ARTICLE I - NAME

The title of this Association shall be Wells Fargo Bank, National Association. The Association may also use the abbreviation Wells Fargo Bank, N.A.

### ARTICLE II - OFFICES

1. <u>Main Office</u>. The main office of this Association shall be in the City of Sioux Falls, County of Minnehaha, State of South Dakota. The Board of Directors shall have the power to change the location of the main office to any other place within the limits of the City of Sioux Falls, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

2. <u>Branch Offices</u>. The Board of Directors shall have the power to establish or change the location of any branch or branches of this Association to any other location, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

3. <u>Conduct of Business</u>. The general business of the Association shall be conducted at its main office and its branches.

### ARTICLE III - BOARD OF DIRECTORS

1. <u>Number</u>. The Board of Directors of this Association shall consist of not less than five nor more than twenty-five persons, the exact number to be fixed and determined from time to time by resolution of a majority of the full Board of Directors or by resolution of the shareholders at any annual or special meeting thereof.

2. <u>Qualification</u>. Each director, during the full term of his or her directorship, shall own a minimum of $1,000 par value of stock of this Association or an equivalent interest, as determined by the Comptroller of the Currency, in any company which has control over this Association within the meaning of Section 2 of the Bank Holding Company Act of 1956.

3. <u>Vacancy</u>. The Board of Directors, by the vote of a majority of the full Board, may, between annual meetings of shareholders, fill vacancies created by the death, incapacity or resignation of any director and by the vote of a majority of the full Board may also, between annual meetings of shareholders, increase the membership of the Board by not more than four members and by like vote appoint qualified persons to fill the vacancies created thereby; provided, however, that at no time shall there be more than twenty-five directors of this Association; and provided further, however, that not more than two members may be added to the Board of Directors in the event that the total number of directors last elected by shareholders was fifteen or less.



EXHIBIT
_B_

4. <u>Appointment of Officers</u>. The Board of Directors shall appoint one of its members President of this Association, who shall act as Chairman of the Board, unless the Board appoints another director to act as Chairman. In the event the Board of Directors shall appoint a President and a Chairman, the Board shall designate which person shall act as the chief executive officer of this Association. The Board of Directors shall have the power to appoint one or more Vice Presidents and to appoint a Cashier and such other officers and employees as may be required to transact the business of this Association.

5. <u>Powers</u>. The Board of Directors shall have the power to define the duties of the officers and employees of this Association; to fix the salaries to be paid to them; to dismiss them; to require bonds from them and to fix the penalty thereof; to regulate the manner in which the increase of the capital of this Association shall be made; to manage and administer the business and affairs of this Association; to make all Bylaws that it may be lawful for them to make; and generally to do and perform all acts that it may be legal for a Board of Directors to do and perform.

### ARTICLE IV - MEETINGS OF SHAREHOLDERS

1. <u>Annual Meeting</u>. The annual meeting of the shareholders for the election of directors and the transaction of whatever other business may be brought before said meeting shall be held at the main office, or such other place as the Board of Directors may designate, on the day of each year specified therefor in the Bylaws, but if no election is held on that day, it may be held on any subsequent day according to the provisions of law; and all elections shall be held according to such lawful regulations as may be prescribed by the Board of Directors.

2. <u>Special Meetings</u>. The Board of Directors, the Chairman, the President, or any one or more shareholders owning, in the aggregate, not less than 25 percent of the stock of this Association, may call a special meeting of shareholders at any time.

3. <u>Notice of Meetings</u>. Unless otherwise provided by the laws of the United States, a notice of the time, place, and purpose of every annual and special meeting of the shareholders shall be given by first-class mail, postage prepaid, mailed at least ten days prior to the date of such meeting to each shareholder of record at his or her address as shown upon the books of this Association.

4 <u>Written Consents</u>. Any action required or permitted to be taken at an annual or special meeting of the shareholders of the Association may be taken without prior written notice and without any meeting if such action is taken by written action, containing a waiver of notice, signed by all of the shareholders entitled to vote on that action.

### ARTICLE V - CAPITAL

1. <u>Capitalization</u>. The amount of authorized capital stock of this Association shall be $1,122,000,000, divided into 112,200,000 shares of common stock of the par value of Ten Dollars ($10.00) each; but said capital stock may be increased or decreased from time to time, in accordance with the provisions of the laws of the United States.

-2-

2. <u>Voting Rights</u>. Each holder of common stock of the Association shall be entitled to vote on all matters, one vote for each share of common stock held by such holder. No holder of shares of the capital stock of any class of this Association shall have any pre-emptive or preferential right of subscription to any shares of any class of stock of this Association, whether now or hereafter authorized, or to any obligations convertible into stock of this Association, issued or sold, nor any right of subscription to any thereof other than such, if any, as the Board of Directors, in its discretion, may from time to time determine and at such price as the Board of Directors may from time to time fix.

3. <u>Debt Obligations</u>. The Association, at any time and from time to time, may authorize and issue debt obligations, whether or nor subordinated, without the approval of the shareholders.

## ARTICLE VI - PERPETUAL EXISTENCE

The corporate existence of this Association shall continue until terminated in accordance with the laws of the United States.

## ARTICLE VII - INDEMNIFICATION

To the extent permitted by 12 CFR 7.2014 and consistent with the requirements of 12 USC 1828(k) and the implementing regulations thereunder:

(a) <u>Elimination of Certain Liability of Directors</u>. A director of the Association shall not be personally liable to the Association or its shareholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Association or its shareholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

(b)(1) <u>Right to Indemnification</u>. Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the Association or is or was serving at the request of the Association as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action or inaction in an official capacity as a director, officer, employee, or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Association to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Association to provide broader indemnification rights than said law permitted the Association to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably

-3-

incurred or suffered by such person in connection therewith and such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that the Association shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the Association. The right to indemnification conferred in this paragraph (b) shall be a contract right and shall include the right to be paid by the Association the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, if the Delaware General Corporation Law requires, the payment of such expenses incurred by a director of officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Association of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director of officer is not entitled to be indemnified under this paragraph (b) or otherwise. The Association may, by action of its Board of Directors, provide indemnification to employees and agents of the Association with the same scope and effect as the foregoing indemnification of directors and officers.

(2) Non-Exclusivity of Rights. The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this paragraph (b) shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Articles of Association, by-law, agreement, vote of shareholders or disinterested directors or otherwise.

(3) Insurance. The Association may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Association or another corporation, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the Association would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

## ARTICLE VIII - AMENDMENT

These Articles of Association may be amended at any regular or special meeting of the shareholders by the affirmative vote of the holders of a majority of the stock of this Association, unless the vote of the holders of a greater amount of stock is required by law, and in that case by the vote of holders of such greater amount.

WFBArticles

-4-