1

2

3                              UNITED STATES DISTRICT COURT

4                             NORTHERN DISTRICT OF CALIFORNIA

5   GUSTAVO REYES, ET AL.,                           Case No. C-10-01667 JCS

6
              Plaintiffs,                     **ORDER DENYING MOTION FOR**
7                                             **REMAND TO STATE COURT AND**
        v.                                    **VACATING JULY 16, 2010 HEARING**
8                                             **[Docket No. 12]**
    WELLS FARGO BANK, N.A.,
9
              Defendant.
10  _____/

11

12  **I.    INTRODUCTION**

13       Plaintiffs bring a purported class action on behalf of themselves and others who are similarly

14  situated challenging Defendant Wells Fargo's mortgage practices relating to its distressed residential

15  mortgage customers.   Plaintiffs filed the action in California Superior Court on March 11, 2010 and

16  Wells Fargo removed the action to federal court on April 19, 2010.   In its Notice of Removal, Wells

17  Fargo asserted that the action was subject to removal on the basis of diversity jurisdiction, pursuant

18  to 28 U.S.C. § 1332(a).   Presently before the Court is Plaintiffs' Motion for Remand to State Court

19  ("the Motion"), in which Plaintiffs seek remand on the basis that Defendants have not satisfied the

20  $75,000.00 amount-in-controversy requirement for diversity jurisdiction.   The Court finds that the

21  Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b), and

22  therefore **vacates the July 16, 2010 hearing**.  For the reasons stated below, the Motion is DENIED.[1]

23  **II.   BACKGROUND**

24       **A.    The Complaint**

25       In the Complaint, Plaintiffs allege that in 2003, they purchased property located at 1321

26  Grove Way, Hayward, CA 94541 ("Property"), where they reside, for approximately $336,000.00.

27  _____

28       [1]The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to
    28 U.S.C. § 636(c).

**United States District Court**

For the Northern District of California

Compl. ¶¶ 2, 8.  Plaintiffs' first mortgage on the property was for $268,000.00.  *Id*. at ¶ 8.  On or about September 16, 2005, Wells Fargo refinanced the Property, providing Plaintiffs with a new loan in the amount of $452,000. 00 and taking a deed of trust as security.  *Id*. at ¶ 9 & Ex. A (Deed of Trust).  Plaintiffs used the money they received on the refinance to make improvements on the Property.  *Id*. at ¶ 10.

By June 2009, the value of the Property had fallen to less than half of the loan amount and Plaintiffs, due to economic hardship, were unable to make full mortgage payments.  *Id*. at ¶¶ 10-11.  Plaintiffs called Wells Fargo to request a loan modification, but Wells Fargo denied the request.  *Id*. at ¶ 11.  On or about September 10, 2009, Wells Fargo recorded and served a Notice of Default and Election to Sell ("NOD"), electing to proceed with non-judicial foreclosure of the Property under Section 2924 of the California Civil Code.  *Id*. at ¶ 12 & Ex. B (NOD).  Under Section 2924, the recordation and serving of the NOD triggered a three month right-to-cure period before Defendant could issue a Notice of Trustee's Sale establishing a foreclosure sale date on the Property.  *Id*.  In the meantime, Plaintiffs continued to seek loan modification or some other form of relief.  *Id*. at ¶ 14.

On December 1, 2009, Wells Fargo offered Plaintiffs a Special Forbearance Agreement ("Agreement").  *Id*. at ¶ 15 & Ex. C (Agreement).  Under the Agreement, in exchange for monthly payments of $1,307.57, Wells Fargo agreed to: (a) suspend foreclosure activities for a three month period, and (b) consider Plaintiffs' request for loan modification.  *Id*. at ¶ 15 & Ex. C (Agreement).  Plaintiffs allege that they made the monthly payments required under the Agreement, making payments for the months of December, 2009 through March, 2010, before learning they had been foreclosed on.  *Id*. at ¶ 16.  Specifically, on December 11, 2009, Wells Fargo had recorded the Notice of Trustee's Sale against the Property, and on February 19, 2010 the Property had been sold by trustee's sale.  *Id*. at ¶ 17 & Exs. D and E.  The Property was granted and conveyed to Wells Fargo Asset Securities Corporation. Compl. Ex. E ("the grantee herein WAS the foreclosing beneficiary").

Based on these factual allegations, Plaintiffs assert the following five claims against Wells Fargo:  1) breach of contract; 2) restitution (unjust enrichment); 3) unfair competition; 4) declaratory

United States District Court

For the Northern District of California

1  relief; 5) injunctive relief.  *Id*. at ¶¶ 26-43.  With respect to the request for injunctive relief,

2  Plaintiffs ask the Court to enjoin Wells Fargo's operations to ensure compliance with the Agreement

3  and to prevent Wells Fargo from "transferring rights in the unlawfully foreclosed properties."  *Id*. at

4  9.  Plaintiffs assert their claims on behalf of themselves and a class of Plaintiffs that includes "all

5  California residential mortgage borrowers who made or tendered each of their monthly installment

6  payments to Wells Fargo pursuant to the Special Forbearance Agreement (or similar agreements)

7  during the four years proceeding [sic] the filing of this action."  *Id*. at ¶ 18.

8           **B.       The Notice of Removal**

9           Wells Fargo removed this action to federal court on the basis of diversity jurisdiction.  In

10  particular, in the Notice of Removal, Wells Fargo stated that: 1) as of the time the Complaint was

11  filed, there was complete diversity of citizenship among the parties; and 2) the amount in

12  controversy exceeds $75,000.00.  Notice ¶¶ 6, 19.  In addressing the amount in controversy, Wells

13  Fargo states in the Notice of Removal that "[a]lthough Plaintiffs fail to plead a specific amount in

14  controversy, they assert a right to relief in the form of an injunction, damages, restitution, and

15  reasonable attorneys' fees and costs of litigation."  *Id*. at ¶ 9.  Wells Fargo goes on to assert that the

16  request for attorneys' fees, by itself, is sufficient to satisfy the amount-in-controversy requirement.

17  *Id*. at ¶ 12.  Wells Fargo relies, in part, on a declaration by William Stern, an expert on Unfair

18  Competition Law ("UCL"), stating that "a plaintiff who prevails on [a UCL claim], individually or

19  as a private attorney general, and subsequently moves for attorneys' fees under Section 1021.5 of the

20  Code of Civil Procedure will *virtually always* receive a fee award in excess of $75,000.00."

21  Declaration of William L. Stern in Support of Wells Fargo's Notice of Removal ("Stern Decl.") ¶

22  12.  In support of this statement, Stern cites to numerous decisions in UCL cases in which attorneys'

23  fees awards exceeded $75,000.00. *Id*. at ¶ 9.

24           **C.       The Motion**

25           In the Motion, Plaintiffs challenge Wells Fargo's reliance on attorneys' fees as a basis for

26  establishing the amount in controversy, asserting that Wells Fargo failed to take into account the rule

27  that attorneys' fees sought by class members cannot be aggregated for the purposes of determining

28  the amount in controversy.  Rather, Plaintiffs assert, a removing defendant must establish that each

1   plaintiff's pro-rata share of the attorneys' fees award will satisfy the amount-in-controversy

2   requirement.  Plaintiffs further assert that many of the cases cited by Wells Fargo's expert to show

3   that attorneys' fees awards on UCL claims are misleading to the extent that they were decided prior

4   to Proposition 64, which amended the UCL to make clear that UCL private attorney general actions,

5   such as the one here, were to be treated like other class action claims, that is, as a collection of

6   separate and distinct claims by class members.  Applying the proper standard, Plaintiffs assert, there

7   is no evidence showing that each plaintiff's *non-aggregated* attorneys' fees will meet the amount-in-

8   controversy requirement.

9        In its Opposition, Wells Fargo notes that Plaintiffs do not dispute that the parties are

10  completely diverse.  Further, Wells Fargo reiterates its position that Plaintiffs' request for attorneys'

11  fees is sufficient to meet the amount-in-controversy requirement, citing both to awards in UCL

12  cases, and to awards arising out of contractual provisions in breach-of-contract cases.  Wells Fargo

13  rejects Plaintiffs' assertion that cases decided before Proposition 64 are no longer relevant in

14  determining the likely amount of attorneys' fee awards in UCL private attorney general actions,

15  asserting that Proposition 64 merely changed the standing requirements for bringing such actions.  In

16  addition, Wells Fargo asserts that the amount-in-controversy requirement is satisfied because the

17  Notice of Removal also cited to the injunctive relief sought by Plaintiffs as a grounds for removal.

18  Although the Notice of Removal did not contain any discussion of the facts relating to this assertion,

19  Wells Fargo argues, this reference is sufficient to show that the amount-in-controversy requirement

20  is met because it is evident from the complaint that the object of the litigation – Plaintiffs' foreclosed

21  home – is worth more than $75,000.00.  To the extent the Notice of Removal is deficient, Wells

22  Fargo contends, its Opposition to Plaintiff's Motion should be considered as an amendment to the

23  Notice.

24       In their Reply, Plaintiffs reject Wells Fargo's assertion that the Notice of Removal

25  adequately cited to the injunctive relief to show that the amount in controversy requirement was met.

26  Rather, Plaintiffs argue that this ground is entirely new and as such, should not be considered.

27  Further, Plaintiffs argue that their request for attorneys' fees does not satisfy the amount-in-

28  controversy requirement in this case.

**United States District Court**
For the Northern District of California

1    **III.    ANALYSIS**

2         **A.     Legal Standard**

3         Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the

4    district courts of the United States have original jurisdiction, may be removed by the defendant or

5    the defendants, to the district court of the United States for the district and division embracing the

6    place where such action is pending."  Section 1332(a), in turn, provides that "the  district courts shall

7    have  original jurisdiction of all civil actions where the matter in controversy exceeds the sum or

8    value of $75,000, exclusive of interest and costs," and is between parties with diverse citizenship.

9    28 U.S.C. § 1332(a).

10        Under 28 U.S.C. § 1446(a), a notice of removal must contain "a short and plain statement of

11   the grounds for removal." 28 U.S.C. § 1446(a).  Although a defendant's notice of removal "cannot be

12   amended to add a separate basis for removal jurisdiction after the thirty day period" for removal has

13   expired, *see ARCO Environmental Remediation, L.L.C. v. Department of Health and  ARCO*

14   *Environmental Remediation, L.L.C. v. Department of Health and Environmental Quality of*

15   *Montana*, 213 F.3d 1108, 1117 (9th Cir. 2000), a defendant may amend the notice of removal after

16   the thirty-day window has closed to correct a "defective allegation of jurisdiction." *See* 28 U.S.C. §

17   1653; *see also* C. WRIGHT, A. MILLER & M. KANE, Federal Practice & Procedure § 3733 at 358

18   (3d ed.1998) (stating that after the thirty-day removal period notice may be amended "only to set out

19   more specifically the grounds for removal that already have been stated, albeit imperfectly, in the

20   original notice."). Thus, in *Cohn v. Petsmart, Inc.*, the Ninth Circuit held that the district court did

21   not err in construing defendant's opposition to a motion to remand as an amendment to its notice of

22   removal where the removing party only "summarily alleged" that the amount-in-controversy

23   requirement was met without citing supporting facts.  281 F.3d 837, 840 n. 1 (9th Cir. 2002) (citing

24   *Willingham v. Morgan*, 395 U.S. 402, 407 n. 3 (1969) (holding that "it is proper to treat the removal

25   petition as if it had been amended to include the relevant information contained in the later-filed

26   affidavits")).

27        The party that seeks to remain in federal court has the burden of proof on a motion to remand

28   to state court.  *See Conrad Associates v. Hartford Accident & Indemnity Co.*, 994 F.Supp. 1196,

**United States District Court**
For the Northern District of California

1198 (N.D.Cal.1998).  The Ninth Circuit has held that "[t]he strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citations omitted).  In cases in which a plaintiff's state court complaint does not specify an exact figure for damages, the defendant must establish, by a preponderance of the evidence, that the amount in controversy exceeds the statutory minimum.  *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (holding that where amount at stake was not clear from allegations in the complaint, defendant seeking to remain in federal court has the burden "of actually proving the facts to support jurisdiction, including the jurisdictional amount.").

> **B.     Whether Wells Fargo Has Demonstrated that the Amount in Controversy Requirement is Met**

Wells Fargo asserts that the amount-in-controversy requirement is satisfied on the basis of Plaintiffs' request for attorneys' fees *and* on the ground that the value of the injunctive relief sought by Plaintiffs exceeds the jurisdictional minimum.  As a preliminary matter, the Court finds that the Notice of Removal cites to both requests as grounds for asserting diversity jurisdiction, even if it does so only summarily as to the request for injunctive relief.  The Complaint clearly stated that the Plaintiffs sought injunctive relief to prevent the Defendant from "transferring rights in the unlawfully foreclosed properties," Compl. at 9, and the Defendant's Notice of Removal asserted that the Plaintiffs claimed a "right to relief in the form of an injunction."  Notice ¶ 9.  Therefore, to the extent that the Notice of Removal may be deficient with respect to the allegation of jurisdiction based on Plaintiffs' injunctive relief request, the Court may properly consider Wells Fargo's Opposition to the Motion as an amendment to the Notice of Removal.  Further, the Court finds, for the reasons stated below, that Plaintiffs' request for injunctive relief is sufficient to establish the amount in controversy for the purposes of removal.  Therefore, the Court declines to reach the question of whether Plaintiffs' request for attorneys' fees would, by itself, satisfy the amount-in-controversy requirement.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Wash. State Apple*

United States District Court

For the Northern District of California

1    *Adver. Comm'n*, 432 U.S. 333, 347 (1977).  If the primary purpose of a lawsuit is to enjoin a bank

2    from selling or transferring property, then the property is the object of the litigation.  *See Garfinkle*

3    *v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973); *see also Cabriales v. Aurora Loan*

4    *Services*, 2010 WL 761081 *3 (N.D.Cal. Mar. 2, 2010) (holding that the object of the litigation was

5    the property the plaintiff sought to enjoin the defendant from selling)*;  Henderson v. Nationstar*

6    *Mortgage Company, LLC,* 2008 WL 302374 *1 (W.D.Wash. Jan. 31, 2008) (holding that the object

7    of the litigation was the property the plaintiff sought to enjoin the defendant from selling at a non-

8    judicial foreclosure sale);  *Garcia v. Citibank, N.A,* 2010 WL 1658569 *2 (E.D.Cal. Apr. 23, 2010)

9    (holding that the object of the litigation was the property that plaintiff sought to enjoin the defendant

10   from selling at future foreclosure proceedings).  In *Garfinkle*, the defendant was proceeding with a

11   non-judicial foreclosure on the plaintiff's property, and had issued a notice of default but had not yet

12   sold the property.  *Garfinkle*, 483 F.2d at 1076.   The plaintiffs challenged the lawfulness of the non-

13   judicial foreclosure procedure and sought an injunction prohibiting the bank from selling the

14   property.  *Id.*  Reasoning that "the whole purpose of this action is to [prevent] the [bank] from

15   selling [the] property," the court found the property to be the object of the litigation.  *Id*.

16   Even if the property at issue has already been sold in foreclosure by the defendant, as is the

17   case here, the property may still be the object of the litigation when the plaintiff sues for injunctive

18   relief.  *See Delgado v. Bank of America Corp.*, 2009 WL 4163525 *6 (E.D.Cal. Nov. 23, 2009).  In

19   *Delgado*, the plaintiff entered into a deed of trust with the defendant to secure its purchase of a

20   home, then defaulted on its loan payments, and the defendant later sold the property in a non-judicial

21   foreclosure proceeding.  *Id.* at *2. The defendant had already sold the plaintiff's property when the

22   plaintiff filed suit seeking damages, declaratory and injunctive relief, including an order to set aside

23   the sale of the property.  *Id*.  The court ruled that the object of the litigation was the foreclosed

24   property.  *Id*. at *6.

25   The above cases support the proposition that regardless of whether the property at issue has

26   been sold in foreclosure or is still held by the lender, the value of the property is the object of the

27   litigation for the purposes of determining whether the amount-in-controversy requirement has been

28   met so long as the plaintiff is seeking injunctive relief to prevent or undo the lender's sale of the

**United States District Court**

For the Northern District of California

1   property.   That is the case here.  As noted above, as a result of the foreclosure sale, the Property has

2   been sold to Wells Fargo Asset Securities Corporation, apparently a division of Wells Fargo.  *See*

3   Compl. Ex. E.   In the complaint, Plaintiffs have requested an injunction to prevent Wells Fargo

4   from "transferring rights in the unlawfully foreclosed properties." Compl. at 9.  In other words,

5   Plaintiffs seek to prevent Wells Fargo from selling the foreclosed property to a third party.

6   Therefore, as a practical matter, the injunctive relief sought by Plaintiffs in this case is analogous to

7   the relief that was requested in *Henderson*, *Garcia*, and *Cabriales*, in which the plaintiffs' properties

8   had not yet been sold when the actions were initiated.  Further, even if the entity that purchased the

9   Property in this action is a separate entity from Defendant Wells Fargo, the *Delgado* decision

10  supports the conclusion that the Property is, nonetheless, the object of the litigation.

11         The next issue is how to value the Property.  In *Garfinkle*, the court held that the amount-in-

12  controversy requirement was satisfied because both the amount of the plaintiff's indebtedness on the

13  loan and the fair market value of the property exceeded the statutory amount in controversy

14  threshold.  *Garfinkle*, 483 F.2d at 1076.  In the wake of *Garfinkle*, some district courts in the Ninth

15  Circuit have relied on the amount of indebtedness in foreclosure cases, *see, e.g., Henderson,* 2008

16  WL 302374 at *1;  *Garcia,* 2010 WL 1658569 at *2, while others have looked to the fair market

17  value of the property to determine whether the amount-in-controversy requirement is met.  *See, e.g.*,

18  *Delgado*, 2009 WL 4163525 at *6 (holding that defendants had met their burden regarding the

19  amount in controversy by submitting an affidavit claiming that an appraisal of the property exceeded

20  $75,000.00.);  *Cabriales*, 2010 WL 761081 at *3.

21         Based on *Garfinkle* and its progeny, the Court concludes that the amount-in-controversy

22  requirement is satisfied in this case.  Here, as in *Garfinkle*, the Court need not decide which method

23  of determining the value of the injunctive relief should be used because under either standard, the

24  amount-in-controversy requirement is satisfied.  In particular, the Property was sold for $220,000.00

25  at the trustee's sale –  a public auction; thus, the $220,000.00 sale price is a fair assessment of the

26  current market value of the Property.  Compl. Ex. E.  Further, documents attached to the Complaint

27  indicate that the amount of unpaid debt on the loan at the time of the trustee's sale was $460,946.68.

28  *Id*.  Therefore, either method of valuing the litigation puts this case over the $75,000.00 amount-in-

United States District Court

For the Northern District of California

1  controversy threshold.  Further, the Court rejects Plaintiffs' assertion that the value of the injunctive

2  relief is merely the administrative cost of restructuring Plaintiffs' loan.  Reply at 6.  Plaintiffs have

3  cited no case law in support of this assertion.  Nor have they addressed the body of case law

4  discussed above, in which courts have held that the proper measure of the value of injunctive relief

5  in similar actions challenging foreclosure is the value of the property subject to foreclosure.

6         Finally, to the extent that the Court finds that the named plaintiffs meet the amount-in-

7  controversy requirement, it also concludes that it has supplemental jurisdiction over the unnamed

8  class members, regardless of the value of the requested injunctive relief as to those class members.

9  *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) ("we hold that if a named

10  plaintiff in a diversity class action has a claim with an amount in controversy in excess of $75,000,

11  28 U.S.C. § 1367 confers supplemental jurisdiction over claims of unnamed class members

12  irrespective of the amount in controversy in those claims. . .").

13  **IV.  CONCLUSION**

14         For the reasons stated above, the Motion is DENIED.

15         IT IS SO ORDERED.

16

17  Dated: June 29, 2010

18

19

20         _____

21         JOSEPH C. SPERO
        United States Magistrate Judge

22

23

24

25

26

27

28