**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GUSTAVO REYES, ET AL.,

        Plaintiffs,

   v.

WELLS FARGO BANK, N.A.,

        Defendant.

_____/

Case No. C-10-01667 JCS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [Docket No. 31]**

## I.    INTRODUCTION

Plaintiffs bring a purported class action on behalf of themselves and others who are similarly situated challenging Defendant Wells Fargo's mortgage practices relating to its distressed residential mortgage customers.   The case was removed to federal court on April 19, 2010 on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a).  Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint ("the Motion"), in which Defendant seeks dismissal of all of Plaintiffs' claims on the basis that they fail to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In addition, Defendant seeks dismissal of Plaintiffs' second, third and fourth causes of action to the extent that they sound in fraud on the basis that Plaintiffs have not alleged these claims with particularity.  A hearing on the Motion was held on Friday, December 17, 2010 at 9:30 a.m.  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

---

[1]The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**United States District Court**
For the Northern District of California

## II.     BACKGROUND

### A.     The First Amended Complaint

In the Introduction of their First Amended Complaint ("FAC"), Plaintiffs state that their purported class action lawsuit "seeks to redress and remedy Wells Fargo's recent practice of extracting payments from defaulted residential mortgage customers by falsely promising them the opportunity to retain their homes through an illusory forbearance-to-modification program." FAC at ¶ 1.  According to Plaintiffs, Wells Fargo's loss mitigation department sent mortgage customers:

> forbearance-to-modification offer packages [that] were designed to give the impression that customers are being put into a trial modification program to assess their willingness and ability to make reduced payments when, in fact, based on the information already available to it, Wells Fargo knew or should have known that it was not prepared to permanently modify their mortgages to the forbearance payment nor to any payment that the borrowers could reasonably afford.

*Id.* at ¶ 3.  Plaintiffs further contend that the "forbearance-to-modification program was essentially a sham [ ] designed to generate revenue from non-performing mortgage loans without providing customers with the promised consideration of an opportunity to retain their homes."  *Id.* at ¶ 5.

Plaintiffs Gustavo Reyes and Maria Teresa Guerrero allege that in 2003, they purchased property located at 1321 Grove Way, Hayward, CA 94541 ("Property"), where they reside, for approximately $336,000.00.  *Id.* at  ¶¶ 6, 10.  Plaintiffs' first mortgage on the property was for $268,000.00.  *Id.* at ¶ 10.  On or about September 16, 2005, Wells Fargo refinanced the Property, providing Plaintiffs with a new loan in the amount of $452,000 and taking a deed of trust as security.  *Id.* at ¶ 11 & Ex. A (Deed of Trust).  Plaintiffs used the money they received on the refinance to make improvements on the Property.  *Id.* at ¶ 12.

By June 2009, the value of the Property had fallen to less than half of the loan amount and Plaintiffs, due to economic hardship, were unable to make full mortgage payments.  *Id.* at ¶ 13. Plaintiffs called Wells Fargo to request a loan modification, but Wells Fargo denied the request.  *Id.* On or about September 10, 2009, Wells Fargo recorded and served a Notice of Default and Election to Sell ("NOD"), electing to proceed with non-judicial foreclosure of the Property under Section 2924 of the California Civil Code.  *Id.* at ¶ 14 & Ex. B (NOD).  Under Section 2924, the recordation and serving of the NOD triggered a three month right-to-cure period before Defendant could issue a

**United States District Court**
For the Northern District of California

1  Notice of Trustee's Sale establishing a foreclosure sale date on the Property. *Id.* In the meantime,

2  Plaintiffs continued to seek loan modification or some other form of relief. *Id.* at ¶ 16.

3       On December 1, 2009, Wells Fargo sent Plaintiffs a letter ("Offer Letter") with a Special

4  Forbearance Agreement ("Agreement" or "Special Forbearance Agreement") enclosed. *Id.* at ¶ 17,

5  Exs. A (Offer Letter) & B (Agreement). The Offer Letter stated, in part, as follows:

6      We have good news about the above referenced loan. Our goal is simple. We want to ensure
   you have every opportunity to retain your home. Based on our telephone conversation and
7  the financial information you provided, we would like to offer you a Special Forbearance
   Agreement ("Agreement").

8

9      Currently, your loan is due for 6 installments, from June 01, 2009 through December 01,
   2009. As agreed, you have promised to pay the amounts stated within the Agreement, the
   terms and conditions of which are outlined on page two. The Agreement must be signed and
10 returned with the first installment. This is not a waiver of the accrued or future payments
   that become due, but a trial period showing you can make regular monthly payments. Please
11 note that investor approval is still pending.

12     Upon successful completion of the Agreement, your loan will not be contractually current.
   Since the installments may be less than the total amount due, you may still have outstanding
13 payments and fees. Any outstanding payments and fees will be reviewed for a loan
   modification. If approved for a loan modification, based on investor guidelines, this will
14 satisfy the remaining past due payments on your loan and we will send you a loan
   modification agreement. An additional contribution may be required.
15
   . . .
16
   If your loan is in foreclosure, we will instruct our foreclosure counsel to suspend foreclosure
17 proceedings once the initial installment has been received, and to continue to suspend the
   action as long as you keep to the terms of the Agreement. Upon full reinstatement, we will
18 instruct our foreclosure counsel to dismiss foreclosure proceedings and report to the credit
   bureaus accordingly.
19

20 *Id.*, Ex. A.

21     The terms and conditions of the Agreement, contained on the next page, stated as follows:

22 SPECIAL FORBEARANCE AGREEMENT – TERMS AND CONDITIONS

23    1.   Currently, your loan is due for 6 installments, from June 01, 2009 through December
   01, 2009. The indebtedness of the referenced loan is in default and in consideration of
24 extending forbearance for a period of time, it is necessary that you indicate your
   understanding and acceptance of the terms of the forbearance agreement by
25 immediately signing and returning this agreement.

26    2.   This Agreement temporarily accepts reduced installments or maintains regular
   monthly payments as outlined in section 5. Upon successful completion of the
27 Agreement, your loan will not be contractually current. Since the installments may
   be less than the total amount due you may still have outstanding payments and fees.
28 Any outstanding payments and fees will be reviewed for a loan modification. If

approved for a loan modification, based on investor guidelines, this will satisfy the remaining past due payments on your loan and we will send you a loan modification agreement.  An additional contribution may be required.

3.  The lender is under no obligation to enter into any further agreement, and this Agreement shall not constitute a waiver of the lender's right to insist upon strict performance in the future.

4.  All of the provisions of the Note and Security Instrument, except as herein provided, shall remain in full force and effect.  Any breach of any provision of this Agreement or non-compliance with this Agreement shall render the Agreement null and void. The lender, in its sole discretion and without further notice to you, may terminate this Agreement.  If the Agreement is terminated, the lender may institute foreclosure proceedings according to the terms of the Note and Security Instrument. In the event of foreclosure, you may incur additional expenses and attorney's fees and costs.

5.  Each payment must be remitted according to the schedule below.

| PLAN | DATE | AMOUNT | PLAN | DATE | AMOUNT |
|------|------|--------|------|------|--------|
| 01 | 12/01/09 | 1,307.57 | 02 | 01/01/10 | 1,307.57 |
| 03 | 02/01/10 | 1,3057.57 | | | |

6.  There is no "grace period" allowance in this Agreement.  All installments must be received on or before the agreed due date and made strictly in accordance with section 5 above.  If any installment is not received on or before the respective due date, the Agreement will be void and the total delinquency including fees, will be due immediately.

7.  The total amount indicated on each installment must be remitted.  In the event the total amount due of each payment is not received, the Agreement will be rendered null and void.

By signing this Agreement, I hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I may have.  This includes text messages, at no cost to me, and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone.

*Id.*, Ex. B.

Plaintiffs executed and returned the Agreement and timely made monthly payments for the months of December, 2009 through March, 2010, before learning they had been foreclosed on.  *Id.* at ¶ 19.  Specifically, on December 11, 2009, Wells Fargo had recorded the Notice of Trustee's Sale against the Property.  *Id.* at ¶ 20.  On February 9, 2010, Wells Fargo mailed Plaintiffs a letter declining the modification.  *Id.* at ¶ 21.  On February 19, 2010,  the Property was sold by a non-judicial foreclosure.  *Id.* at ¶¶ 4, 22.  In March 2010, Plaintiffs made a fourth installment payment before learning that their house had already been foreclosed on.  *Id.* ¶ 19.

Based on these factual allegations, Plaintiffs assert the following four claims against Wells

**United States District Court**
For the Northern District of California

Fargo:

    1) <u>Breach of contract/ implied covenant of good faith and fair dealing</u>: In support of Plaintiffs' breach of contract claim, Plaintiffs allege that:

> Plaintiffs entered into an agreement with defendants whereby, in exchange for the specified monthly payments, defendants agreed to put them into a forbearance-to-modification program that would give them the opportunity to retain there [sic] home based on information previously provided to Wells Fargo and Plaintiffs' demonstration of a willingness and ability to make reduced monthly payments.

FAC at ¶ 31.  Plaintiffs further allege that Defendant "breached the agreement AND totally failed to provide the consideration they promised thereunder.  Specifically, the Agreement did not represent or provide Plaintiffs a meaningful opportunity to retain their home." *Id*. at ¶ 34.  According to Plaintiffs, they were "harmed as a result of the breach, and are entitled in the alternative to damages to terminate the agreement and recover their consideration paid under the Agreement (ie. their forbearance payments) without formal rescission." *Id.*  at ¶ 35.

    2) <u>Rescission and restitution under Cal. Civ. Code §§ 1688-1689</u>:  Plaintiffs seek rescission of the Agreement under Cal. Civ. Code §1689(b) on the basis that Plaintiffs' consent to the Agreement was given by mistake or obtained through fraud and because the consideration promised by Wells Fargo failed in a material respect and through the fault of Wells Fargo. *Id.* at ¶ 39. Plaintiffs further allege:

> Specifically, Wells Fargo represented that it had reviewed (or re-reviewed) Plaintiffs' financial information, and on that basis was offering Plaintiffs access to a forbearance-to-modification program that would give them the opportunity to retain their home provided that they demonstrated an ability to make the reduced payment for the trial period.  Wells Fargo made these representations with the intent of inducing Plaintiffs to enter into the Agreement in reliance thereon, and Plaintiffs did so rely in entering into the Agreement and making payments thereunder.  In fact, Plaintiffs allege, Wells Fargo had no review (or re-review) of Plaintiffs' financial information that triggered the offer, and it knew or should have known based on the information available at the time that it had no forbearance-to-modification program that would have given Plaintiffs the opportunity to retain their home, and that the reduced payment it was affirmatively proposing through the Offer as a "trial" payment was not a payment that it would be willing to accept on a long term basis.

*Id.* at ¶ 40.

    3) <u>Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788 *et seq.*</u>:  Plaintiffs allege that Defendants "were 'debt collectors' engaging in 'debt collection' practices" under the Rosenthal Act and that Defendants violated that statute "by using false,

United States District Court

For the Northern District of California

deceptive, and misleading statements in connection with their collection of Plaintiffs' mortgage debt." *Id.* at ¶ 44.

4) <u>Unfair Competition under Cal. Bus. & Prof. Code §§ 17200 *et seq*</u>:  Plaintiffs allege that Defendant engaged in unlawful, unfair and fraudulent business practices, in violation of California's unfair competition law ("UCL").  In particular, Plaintiffs allege that Defendant engaged in unlawful business practices based on Defendant's alleged violation of the Rosenthal Act.  *Id.* at ¶ 49. Plaintiffs allege that Defendant engaged in fraudulent business practices "because the forbearance-to-modification offer was intended and likely to mislead the public into believing that they could obtain an opportunity to retain their homes."  *Id* at ¶ 48.  Finally, Plaintiffs allege that Defendant engaged in unfair business practices because:

> [Defendant] violated the laws and underlying legislative policies designed to (a) prevent foreclosure, where possible, by requiring mortgage holders to engage in honest foreclosure prevention efforts, and to do so before recordation of a NOD (see Cal. Civ. Code § 2923.5; (b) provide Californians with anti-deficiency protections that prevent mortgage holders from seizing other assets or monies of the borrowers after electing to sell the security in satisfaction of the mortgage debt ) see C.C.P. § 580d, § 726; and c) allow contracting parties to enjoy the benefits of their agreement after paying valuable consideration therefore.

*Id*. at ¶ 50.

Plaintiffs assert their claims on behalf of themselves and a class of Plaintiffs defined as follows:

> All California residential mortgage customers of Wells Fargo who (1) were served with a Notice of Default by or on behalf of Wells Fargo; (2) received the above-described forbearance-to-modification offers from Wells Fargo, consisting of the Offer Letter and Agreement, in substantially the same form presented to Plaintiffs; (3) accepted the offers and made the full payments thereunder; and (4) were foreclosed on.

*Id*. at ¶ 23.   In their Prayer for Relief, Plaintiffs request an order rescinding and/or terminating the Special Forbearance Agreements, awarding restitution of the consideration paid by Plaintiffs and the Class for the Special Forbearance Agreements, statutory damages and an award of attorneys' fees and costs.  *Id*. at 10.

**B.     The Motion**

In the Motion, Defendant asserts that all of Plaintiffs' claims are defective and should be dismissed for failure to state a claim under Rule 12(b)(6).  Motion at 1-2.  In addition, Defendant asserts that all of the claims that are based on alleged fraudulent or deceptive practices, that is, all of

United States District Court

For the Northern District of California

1   Plaintiffs' claims except the breach of contract claim, fail under Rule 9(b) of the Federal Rules of

2   Civil Procedure because Plaintiffs fail to allege the circumstances surrounding the fraud with

3   particularity.  *Id.*  Defendant argues that Plaintiffs' claims fail to state a claim for the reasons stated

4   below.

5           Breach of Contract/ Implied Covenant of Good Faith and Fair Dealing:  Defendant argues

6   that Plaintiffs' breach of contract claim fails because Plaintiffs fail to identify any specific provision

7   of the Agreement that has been breached.  *Id*. at 5-8.  Defendant rejects Plaintiffs' allegation that it

8   breached the Agreement by failing to provide Plaintiffs with a "meaningful opportunity to retain

9   their home," asserting that the Agreement does not promise to put Plaintiffs into a "forbearance to

10  modification program" and indeed, expressly states that the Agreement does not place the lender

11  under any obligation to offer Plaintiffs a loan modification and that the parties' contractual

12  obligations under the note and deed of trust remain in effect.  *See id.* at 5-6 (citing FAC ¶ 34).   For

13  the same reason, Defendant asserts, the claim for breach of the implied covenant of good faith and

14  fair dealing fails.  *Id*. at 8-9.  In addition, Defendant argues that the breach of contract claim fails to

15  state a claim because Plaintiffs do not allege any actual damages, nor can they, because the

16  forbearance payments that were made by Plaintiffs were already required under the loan and courts

17  have declined to find that plaintiffs in similar situations suffered actual damage on a theory of

18  promissory estoppel.  *Id.* at 9-10 (citing *Newgent v. Wells Fargo Bank N.A.*, 2010 WL 761236 (S.D.

19  Cal. March 2, 2010)).  Defendant also points out that any damages that might have been incurred

20  would be offset by the benefit Plaintiffs received from remaining in the property during the three-

21  month forbearance period.  *Id.* at 10.

22          Rescission and Restitution under Cal. Civ. Code §§ 1688-1689:  Defendant argues that this

23  claim fails, as a matter of law, because neither rescission nor restitution is a stand-alone cause of

24  action; rather, both are remedies.  *Id*. at 10-11.  Further, to the extent the claim is based on alleged

25  misrepresentations by Wells Fargo regarding Plaintiffs' acceptance into a forbearance-to-

26  modification program, Defendant contends that this allegation fails to meet the requirements of Rule

27  9(b) because no such promise is made in the Offer Letter or Agreement and the FAC contains no

28  specific allegations showing that such a representation was made by Wells Fargo at any other time.

United States District Court

For the Northern District of California

1   *Id.* at 11-15.  In any event, Defendant argues, Plaintiffs could not have reasonably relied on any such

2   representation to the extent that the Agreement expressly stated that Defendant was under no

3   obligation to modify Plaintiffs' loan.  *Id*. at 12.

4        Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq.*:   Defendant

5   asserts that this claim fails as a matter of law for three reasons.  *Id*. at 15-16.  First, Plaintiffs have

6   failed to sufficiently allege that Defendant is a "debt collector" under the Rosenthal Act.  Second,

7   Defendant argues that Plaintiffs cannot remedy this problem by amendment because a residential

8   mortgage loan is not "debt" under the Rosenthal Act and moreover, foreclosure on a mortgage is not

9   "debt collection" under the Rosenthal Act.  *Id*.  Third, Defendant argues that even though the

10  Rosenthal Act incorporates by reference the federal Fair Debt Collection Practices Act ("FDCPA"),

11  which expressly proscribes false and misleading statements, Plaintiffs cannot state a claim under the

12  Rosenthal Act based on such statements because Defendant is not a "debt collector" under the

13  FDCPA.  *Id*.  Fourth, Defendant asserts that this claim fails because the allegation that Defendant

14  made false and misleading statements is too conclusory to satisfy the heightened pleading

15  requirements of Rule 9(b).  *Id*.

16       Unfair Competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.*: Defendant argues that

17  this claim should be dismissed because Plaintiffs have not suffered any injury in fact and therefore

18  lack standing under California's unfair competition law ("UCL").  *Id*. at 16-17.  Further, Defendant

19  argues, Plaintiffs fail to state a claim under the UCL because they must establish that Defendant

20  engaged in a business practice that is unlawful, unfair, or fraudulent.  *Id*.  According to Defendant,

21  Plaintiffs' claim fails to allege any of the three sufficiently to state a UCL claim.  *Id*.  In particular,

22  Plaintiffs' allegation that Defendant engaged in an unlawful business practice is based on its

23  Rosenthal Act claim, which fails, Defendant asserts, for the reasons stated above.  *Id*. at 17 (citing

24  FAC at ¶ 49).   Further, Defendant contends, Plaintiffs fail to allege any fraudulent business

25  practices because it is clear that Defendant did not extend a forbearance-to-modification offer, as

26  Plaintiffs allege.  *Id*. at 17-18 (citing FAC at ¶ 48).  In addition, Defendant argues that Plaintiffs have

27  not alleged any fraud with particularity.  *Id*.

28

1    Finally, as to unfairness, Defendant argues that Plaintiffs' allegations also fall short.  *Id*. at 18

2  (citing FAC at ¶ 50).  In particular, with respect to Plaintiffs' contention that Defendant failed "to

3  engage in honest foreclosure prevention efforts . . . before recordation of [the notice of default],"

4  Defendants point to Plaintiffs' own allegations that Wells Fargo evaluated (and denied) Plaintiffs'

5  loan modification request *before* recording the notice of default.  *Id.* (citing FAC at ¶¶ 13-14).

6  Defendant also rejects Plaintiffs' assertion that its practices were unfair because they violated the

7  "anti-deficiency protections that prevent mortgage holders from seizing other assets or monies of

8  borrowers after electing to sell the security."  *Id*. (citing FAC at  ¶ 50).  According to Defendant, the

9  "security-first" rule requires the sale of the secured property before the lender pursues the debtor

10 personally for any further deficiency.  *Id.*  That rule does not apply here, however, because there is

11 no allegation that Wells Fargo pursued Plaintiffs personally prior to foreclosure.  *Id*.  Nor, Defendant

12 contends, have Plaintiffs alleged an unfair business practice based on the allegation that Wells Fargo

13 did not allow Plaintiffs to "enjoy the benefits of their agreement after paying valuable consideration

14 therefor."  *Id*. (citing FAC ¶ 50).  Again, Defendant points to Plaintiffs' own allegations, showing

15 that Plaintiffs were allowed to remain in the property during the forbearance period.  *Id*.

16    **C.    The Opposition**

17    In their Opposition, Plaintiffs argue that their claims are sufficiently alleged under Rule

18 12(b)(6) and Rule 9(b), focusing, in particular, on the Offer Letter that accompanied the Agreement

19 described above.  Plaintiffs concede that the Agreement page contained only "illusory legal jargon"

20 but assert that the Offer Letter led them to believe that they had been sent the Agreement in response

21 to financial information that they had provided to Wells Fargo and that the Agreement represented a

22 "bone fide opportunity to save their home."  Opposition at 1.  Plaintiffs point out that the "trial

23 period" mentioned in the Offer Letter is similar to the federal government's "highly publicized

24 Home Affordability Modification Program ('HAMP') . . .[which] actually promises borrowers a

25 permanent income-based loan modification if they are truthful about their finances and succeed in

26

27

28

**United States District Court**
For the Northern District of California

making the trial period payments."[2]  *Id.*  Plaintiffs assert that "the broad *legal* position that Wells

Fargo advances by this motion is that *as a matter of law* it may deceive its preforeclosure borrowers

with impunity so long as the money it thereby receives is less than the borrower owes."  *Id.* at 2.

According to Plaintiffs, Wells Fargo is incorrect.  *Id.*(emphasis in original).  In response to

Defendant's arguments regarding the specific claims asserted in Plaintiffs' FAC, Plaintiffs respond

as follows.

<u>Breach of Contract/ Implied Covenant of Good Faith and Fair Dealing</u>: Plaintiffs assert that

they have stated a claim for breach of contract by alleging that in the Offer Letter – which they argue

is part of the contract – Wells Fargo offered Plaintiffs a meaningful opportunity to retain their home

through loan modification, including suspension of foreclosure activity during the trial period, in

return for Plaintiffs' signature on the Agreement and timely payments, but instead Wells Fargo

foreclosed on Plaintiffs' home during the trial period, even though Plaintiffs had made timely

payments under the Agreement.  *Id.* at 6.  To the extent that the Special Forbearance Agreement

could be interpreted to impose *no* obligation on Defendant, rendering it illusory, Plaintiffs argue that

the implied covenant of good faith and fair dealing read into every contract precludes such an

interpretation.  *Id.* at 6.  According to Plaintiffs, "[t]o prevent a dominant party from unfairly

exercising subjective discretion, [the implied covenant of good faith and fair dealing] implies a

reasonableness requirement if necessary to render the dominant party's consideration non-illusory."

*Id.* (citing *Storek & Storek, Inc. v.. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 57 (2002)).  In

this case, Plaintiffs assert, Defendant's conduct was not reasonable in light of its representation that

it formulated the trial period offer based on the financial information provided by Plaintiffs.  *Id.*

---

[2]Along with their Opposition, Plaintiffs have filed a Request for Judicial Notice in Support of Opposition to Dismiss First Amended Complaint ("RJN" or "Request for Judicial Notice").  In it, Plaintiffs request that the Court take judicial notice under Rule 201 of the Federal Rules of Evidence of the following documents: 1) An April 6, 2009 Hamp Supplemental Directive that is cited in Defendant's Motion; 2) Wells Fargo Servicer Participation Agreement for HAMP, executed April 13, 2009, which is a public record; 3) Notice of Default and Election to Sell, dated September 10, 2009, which is referenced in the FAC and was attached as Exhibit B to Plaintiffs' original complaint; 4) Notice of Trustee's Sale, December 11, 2010, which is a public record and was attached to the original complaint as Exhibit E.  Defendant has not objected to the Request for Judicial Notice which is GRANTED.

United States District Court

For the Northern District of California

Plaintiffs further assert that in the case of a form contract such as the one here, it must be interpreted to protect the reasonable expectations of the weaker party and that inquiry will require the Court to consider extrinsic evidence regarding the circumstances under which the contract was formed, precluding dismissal of the claim on a Rule 12(b)(6) motion.  *Id*. at 7 (citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 271 (1966)).  Plaintiffs note that in determining the parties' reasonable expectations, the Court will need to take into account the fact that: 1) when Wells Fargo sent the Offer Letter to Plaintiffs, it knew that Plaintiffs had no personal obligation to pay on the loan because Defendant had already elected to proceed with a non-judicial foreclosure; and 2) that it made little sense for Plaintiffs to make voluntary payments on their mortgage in light of the foreclosure unless the Special Forbearance Agreement offered a real chance for a loan modification. *Id*. at 7.

Finally, Plaintiffs reject Defendant's argument that their breach of contract claim fails because no damages have been alleged.  *Id.*  at 9-11.  According to Plaintiffs, Defendant has confused damages with consideration, which is the more apt conceptual framework for addressing the implications of Plaintiffs' preexisting obligation to make mortgage payments.  *Id*. at 9.  Plaintiffs assert that Wells Fargo is really arguing that any promises it made to Plaintiffs in the Offer Letter or Agreement are unenforceable because Wells Fargo received no consideration in return, that is, because the payments Plaintiff made were already required under the loan.  *Id*.  Plaintiffs reject this argument, asserting that the payments under the Special Forbearance Agreement were consideration because that Agreement was a separate agreement and Wells Fargo had already elected to accelerate the debt and sell the property as its sole remedy.  *Id*.  In addition, Plaintiffs point to California Code of Civil Procedure § 580d, which precludes a lender from obtaining a deficiency judgment against a borrower after a nonjudicial foreclosure sale.[3]  *Id*.  According to Plaintiffs, because of this provision, Plaintiffs had no further obligation to make payments under the deed of trust once Wells Fargo elected to proceed with a nonjudicial foreclosure; consequently, Plaintiffs' payments under the

---

[3]A deficiency judgment is "a personal judgment against the debtor-mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness." *Cornelison v. Kornbluth*, 15 Cal.3d 590, 603 (1975).

United States District Court

For the Northern District of California

Special Forbearance Agreement were consideration that required Defendant to perform its obligations under the Agreement. *Id*.

Rescission and Restitution under Cal. Civ. Code §§ 1688-1689: Plaintiffs argue that its claims for rescission and restitution do not rely on the existence of contractual damages but rather, seek equitable rescission of the transaction and restitution of their consideration on the grounds of mistake, fraud, and the failure of consideration they were promised. *Id*. at 11. Plaintiffs further assert that this claim is supported by sufficient factual allegations to satisfy Rule 9(b)'s particularity requirements, pointing out that the alleged misrepresentations are contained in a dated writing that is attached to the FAC. *Id*. at 11.

Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq.*: Plaintiffs reject Defendant's assertion that it is not a debt collector under the Rosenthal Act, asserting that the definition of "debt collector" under the Rosenthal Act includes creditors collecting on their own debts, even though he FDCPA does not. *Id*. at 12-13 (citing Cal. Code Civ. Proc. § 1788.2). Further, Plaintiffs argue that the cases cited by Defendant's to establish that a residential mortgage is not "debt" under the Rosenthal Act were wrongly decided. *Id*. at 13-14.

Unfair Competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.*: Plaintiffs argue that they have standing to sue under the UCL because they were induced to make installment payments under the Special Forebearance Agreement on the basis of false and misleading statements and were thereby injured. Plaintiffs argue that even if the preexisting obligation to make mortgage payments defeats their contract and rescission claims, it is not enough to defeat standing under the UCL. *Id*. at 17 (citing *Fireside Bank v. Superior Court*, 40 Cal. 4th 1069 (2007); *Hood v. Santa Barbara Bank & Trust*, 143 Cal. App. 4th 526 (2006); *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)). Plaintiffs further assert that they state a claim under the UCL based on unlawful, unfair and fraudulent business practices. *Id*. at 18-20. In particular, Plaintiffs argue that they state a claim based on unlawful business practices for the same reasons they state a claim under the Rosenthal Act. Plaintiffs assert that they state a claim based on fraudulent business practices because Plaintiffs were deceived by Wells Fargo's cover letter. Finally, Plaintiffs contend that they have stated a claim

1   based on unfair business practices because they have alleged that Defendant's conduct offends

2   public policy and that Plaintiffs were harmed.

3   **III.     ANALYSIS**

4       **A.     Legal Standard**

5           **1.     Rule 12(b)(6)**

6        A complaint may be dismissed for failure to state a claim for which relief can be granted

7   under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose

8   of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star*

9   *Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the

10  pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a]

11  pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the

12  claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

13       In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

14  "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-

15  moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may

16  be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid

17  theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must

18  "contain either direct or inferential allegations respecting all the material elements necessary to

19  sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 562

20  (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). The

21  factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id*.

22  at 1965. However, a complaint does not need detailed factual allegations to survive dismissal. *Id*. at

23  1964. Rather, a complaint need only include enough facts to state a claim that is "plausible on its

24  face." *Id*. at 1974. That is, the pleadings must contain factual allegations "plausibly suggesting (not

25  merely consistent with)" a right to relief. *Id*. at 1965 (noting that this requirement is consistent with

26  Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to

27  relief").

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

### 2.    Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  A court may dismiss a claim grounded in fraud when its allegations fail to satisfy Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  The plaintiff must include "the who, what, when, where, and how" of the fraud.  *Id.* at 1106 (citations omitted).  "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. Glenfed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994).  A claim for fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

### B.    Breach of Contract/ Breach of Implied Covenant of Good Faith and Fair Dealing Claims

Defendant seeks dismissal of Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing (the "breach of contract claims") on the basis that Plaintiffs do not (and cannot) allege either a breach or damages, both of which are required elements to state a claim for breach of contract.  The Court concludes that Defendants are correct with respect to damages and therefore grants the Motion as to the breach of contract claims on that basis only.

### 1.    Relevant Standards Governing Breach of Contract Claims.

The elements of a cause of action for breach of contract are: 1)  the existence of the contract; 2) performance by the plaintiff or excuse for nonperformance; 3)  breach by the defendant; and 4) damages. *First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745 (2001).

### a.    Existence of Contract

A contract requires: 1) parties capable of contacting; 2) their consent; 3) a lawful object; and 4) a sufficient cause or consideration.  Cal. Civ. Code § 1550.   Under California law, "good consideration" is defined as follows:

**United States District Court**

For the Northern District of California

Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

Cal. Civ. Code § 1605.  The existence of consideration is presumed where the contract is set forth in a written instrument and lack of consideration must be specially plead as an affirmative defense. 1 *Witkin, Summary of California Law* 10th (2005) Contracts § 206.  Moreover,  "[a] recital in a contract that a specific consideration has been received is an admission, and is prima facie evidence that such was the consideration."  *Id*. § 207.  However, doing or promising to do what one is already legally bound to do cannot be consideration for a promise.  *Id*. § 218.

"[I]f one of the promises leaves a party free to perform or to withdraw from the agreement at his own unrestricted pleasure, the promise is deemed illusory and it provides no consideration." *Pease v. Brown*, 186 Cal.App.2d 425, 431 (1960).  A court may "imply a covenant of good faith and fair dealing to limit that discretion in order to create a binding contract and avoid a finding that the promise is illusory."  *Storek & Storek, Inc. v. Citicorp. Real Estate, Inc.,*  100 Cal.App.4th 44, 57 (2002).  "However, when the contract is . . . supported by adequate consideration regardless of the discretionary power, there is no need to impose a covenant of good faith in order to create mutuality." *Id*.  Therefore, courts imply such a covenant only in "rare instances."  *Id*.

Where consideration is lacking, a contract may nonetheless be enforceable under the doctrine of promissory estoppel.  *See Raedeke v. Gibraltar Sav. & Loan Assn*., 10 Cal.3d 665, 672-673 (1974) ("the doctrine of promissory estoppel is used to provide a substitute for the consideration which ordinarily is required to create an enforceable promise").  Under the doctrine of promissory estoppel, "a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement."  *Id*. (*citing  Youngman v. Nevada Irrigation Dist.*, 70 Cal.2d 240, 249 (1969)).  For example, in *Garcia v. World Savings, FSB*, 183 Cal. App. 4th 1031 (2010), the court held that a gratuitous oral promise to postpone a foreclosure sale gave rise to an enforceable promise under the doctrine of promissory estoppel where the  borrowers had applied for an expensive loan from a third party in order  to cure the default and had been told their house would not be sold before that loan

United States District Court

For the Northern District of California

1  closed. *Id*. at 1041. The court explained that "[a]ppellants' actions in procuring a high cost, high

2  interest loan by using other property they owned as security is sufficient to support detrimental

3  reliance although it provided no particular benefit to respondent." *Id*.

### b.   Breach

5        In determining whether a breach of contract has occurred, a court must give effect to the

6  mutual intention of the parties. *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*

7  68 Cal.App.4th 445, 474-475 (1998). In *City of Atascaderao*, the Court explained:

> The mutual intention to which the courts give effect is determined by objective
> manifestations of the parties' intent, including the words used in the agreement, as well as
> extrinsic evidence of such objective matters as the surrounding circumstances under which
> the parties negotiated or entered into the contract; the object, nature and subject matter of the
> contract; and the subsequent acts and conduct of the parties.

11  *Id*. (citations omitted). Further, the contract must be construed as a whole so as to give effect to all

12  of the provisions, if reasonably possible. *Id*. at 474.Cal.App. 1 Dist.,1998.

13        A breach of contract claim may be dismissed for failure to state a claim where the terms of

14  the contract are unambiguous. *See Consul Ltd. v. Solide Enterprises, Inc.,* 802 F.2d 1143, 1149 (9th

15  Cir. 1986) (holding that district court erred in dismissing breach of contract claim where contract

16  was ambiguous). A contract provision is ambiguous when it is capable of two or more constructions

17  both of which are reasonable. *Id.* However, "courts will not adopt a strained or absurd

18  interpretation in order to create an ambiguity where none exists." *Id.* Where the contract is a form

19  contract drafted by a party who is in a relatively stronger bargaining position, it is considered an

20  adhesion contract and, in the case of ambiguous terms, is construed in order to protect the reasonable

21  expectations of the weaker party. *See Wheeler v. St. Joseph's Hospital*, 63 Cal. App. 3d 345, 356-

22  357 (1976).

23        A breach of contract may be established on the basis of either an express provision of the

24  contract or on the implied covenant of good faith and fair dealing. *See Storek & Storek, Inc. v.*

25  *Citicorp Real Estate, Inc.*, 100 Cal.App.4th 44, 55 (2002)(recognizing that "every contract imposes

26  upon each party a duty of good faith and fair dealing in the performance of the contract such that

27  neither party shall do anything which will have the effect of destroying or injuring the right of the

28  other party to receive the fruits of the contract"). An implied covenant of good faith and fair dealing

**United States District Court**
For the Northern District of California

1   cannot contradict the express terms of a contract, however.   *Id.* (citing *Carma Developers (Cal.),*

2   *Inc. v. Marathon Development California, Inc.* 2 Cal.4th 342, 374 (1992)).  Finally, "[f]acts alleging

3   a breach, like all essential elements of a breach of contract cause of action, must be pleaded with

4   specificity."  *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App.4th 1, 5 (2007).

5                                   **c.      Damages**

6              In general, for the breach of an obligation arising from contract, the measure of damages is

7   the amount which will compensate the party aggrieved for all the detriment proximately caused

8   thereby, or which, in the ordinary course of things, would be likely to result therefrom.  Cal. Civ.

9   Code § 3300.  In a contract action, "[t]he promisee cannot recover damages from the promisor

10  unless there was valuable consideration to the promisor."  1 Miller & Starr Cal. Real Est. § 1:56 (3d

11  ed.).

12                          **2.       Cases Relating to Forbearance Agreements**

13             In the context of mortgage foreclosures, courts applying California law have generally been

14  reluctant to permit borrowers to assert claims arising out of forbearance agreements such as the one

15  that is at issue in this case, whether styled as claims for breach of contract, conversion or fraud.  *See,*

16  *e.g. Mehta v. Wells Fargo Bank, N.A.*, 2010 WL 3385020 (S.D. Cal. 2010) (holding that plaintiff

17  could not state a claim for breach of contract based on promise to delay foreclosure sale); *Smith v.*

18  *National City Bank*, 2010 WL 1729392 (N.D. Cal. April 27, 2010) (holding that plaintiff failed to

19  state a claim for breach of contract based on forbearance agreement);  *Newgent v. Wells Fargo Bank,*

20  *N.A.*, 2010 WL 761236 (S.D. Cal. March 2, 2010) (holding that plaintiff could not state a claim for

21  conversion based on promise to delay foreclosure if plaintiff submitted partial payment in specified

22  amount);  *Auerbach v. Great Western Bank*, 74 Cal. App. 4th 1172 (1999) (holding that plaintiff

23  could not state a claim for fraud claim based on promise to engage in negotiations to modify loan if

24  plaintiffs continued to make payments under deed of trust).  As Defendant's Motion requires the

25  Court to consider not only whether Plaintiffs' claims are adequate as *currently* alleged but also

26  whether the complaint can be amended to remedy any deficiencies in the allegations, a review of the

27  cases is instructive.

28

United States District Court

For the Northern District of California

1    In *Mehta*, the plaintiff challenged the validity of a foreclosure sale of his property which was

2  conducted despite oral representations by a Wells Fargo employee that the sale would not go

3  forward if the plaintiff provided Wells Fargo with certain documents that it required in connection

4  with the plaintiff's request for a loan modification and where the plaintiff provided those documents

5  as requested.   2010 WL 3385020, at * 8(S.D. Cal. 2010).  Because the promise was oral and

6  modified the terms of a written forbearance agreement, the court found that it could only be

7  enforced, under the statute of frauds, if it were supported by consideration.  *Id*.  The court held that it

8  was not, however, because submission of the forms gave rise to no benefit to Wells Fargo and no

9  detriment to the plaintiff and therefore was not valid consideration.  *Id*. at * 10.  Similarly, the court

10  held, the plaintiff was barred from pursuing a claim based on a theory of promissory estoppel

11  because the allegations showed that the plaintiff did not submit the forms in reliance on the

12  statements by the Wells Fargo employee regarding postponement of the sale and there were no

13  factual allegations that supported the plaintiff's vague allegations that he would have pursued other

14  options to avoid foreclosure but for Wells Fargo's promise.  *Id*. at * 11.

15    In *Smith*, the bank entered into a written forbearance agreement with the mortgagor agreeing

16  to postpone foreclosure proceedings during the term of the agreement if the plaintiff made three

17  payments of $1,283.21 on December 15, 2008, January 15, 2009 and February 15, 2009.  2010 WL

18  1729392, at * 1 (N.D. Cal. April 27, 2010).  The plaintiff made the payments required under the

19  forbearance agreement, but on March 2, 2009, after the last payment had been made, the plaintiff

20  was informed that the investors were not willing to modify the loan.  *Id*. at * 2.  On March 18, 2009,

21  the plaintiff was informed that the foreclosure proceeding would recommence.  *Id*.  Subsequently,

22  the plaintiff sued the mortgagor for, *inter alia*, beach of contract, breach of the implied covenant of

23  good faith and fair dealing, fraud and unfair business practices under Cal. Bus. & Prof. Code §§

24  17200 *et seq*.  *Id*.  In support of the breach of contract claim, the plaintiff alleged that the lender

25  breached by failing to modify the loan even though the plaintiff had successfully completed the

26  agreement.  *Id*.  In support of the fraud and unfair business practices claims, the plaintiff alleged that

27  misrepresentations by employees of the lender misled the plaintiff as to the nature of the forbearance

28  agreement, inducing him to enter into the agreement and make payments under it.  *Id*. at * 3.  The

United States District Court

For the Northern District of California

court held that the plaintiff failed to state a claim for breach of contract because "nothing in the Forbearance Agreement require[d] defendant to modify the loan, and nothing in the agreement prohibits defendant from foreclosing on the property after the expiration of the agreement." *Id*. at *3. The court also dismissed the plaintiff's fraud claim, in part for the reason it dismissed the breach of contract claim, namely, because the Forbearance Agreement clearly stated that it did not promise the borrower a loan modification. *Id*.

In *Newgent*, the plaintiff was a mortgagor who was in default and who had received a notice that her home was to be sold at a trustee's sale on November 6, 2008. 2010 WL 761236, at * 1 (S.D. Cal. March 2, 2010). According to the allegations in the complaint, when the plaintiff contacted defendant Wells Fargo in response to the notice to inquire about the status of her loan modification request, she was told by a Wells Fargo employee that the trustee's sale would be delayed if the plaintiff sent Wells Fargo a check for $2,500.77. *Id*. The plaintiff sent Wells Fargo a check for this amount prior to November 6, 2008 and Wells Fargo cashed the check. *Id*. However, the trustee's sale went forward as scheduled, on November 6, 2008. *Id*. Plaintiff subsequently sued Wells Fargo, asserting, *inter alia*, claims for actual fraud and conversion. *Id*. at * 5-6.

The plaintiff's actual fraud claim in *Newgent* was based on the theory that the plaintiff had been fraudulently induced to enter into a contract which induced her to pay $2,500.77 in return for Wells Fargo's promise to delay the trustees sale – a promise plaintiff alleged Wells Fargo had no intention of keeping – and that but for the deception she would have taken legal action to forestall the sale of her home. *Id*. On this claim, the plaintiff sought a million dollars in damages. *Id*. at * 5. In the alternative, the plaintiff sought to recover the $2,500.77 she paid to Wells Fargo under her claim for conversion. *Id*. The plaintiff's conversion claim was based on the theory that Wells Fargo did not credit the payment towards her mortgage and further, that because in California a lender may not obtain a deficiency judgment against a borrower after a nonjudicial foreclosure, as stated in Cal.

1  Civ. Code § 580d,[4] she had no obligation to make any payment to Wells Fargo. *Id.*   The court

2  rejected both claims.

3         As to the actual fraud claim, the court in *Newgent* reasoned that the plaintiff's allegations

4  were insufficient as to damages because although she alleged that she would have taken legal

5  measures to forestall the sale of her home, she conceded that these measures likely would not have

6  been successful in preventing the trustee's sale.  *Id.*   The court also noted that the actual fraud claim

7  failed because the agreement was not in writing and therefore would have been subject to the statute

8  of frauds.  *Id.* at * 5 (holding that under California law, oral forbearance agreements to modify a

9  mortgage are subject to the statute of frauds (citing *Secrest v. Security National Mortgage Loan*

10  *Trust 2002-2*, 167 Cal. App. 4th 544, 553 (2008)); see also *id.* at 556 (explaining that while full

11  performance by one party to an oral contract may take the contract out of the statute of frauds, this

12  principal "has been limited to the situation where performance consisted of conveying property,

13  rendering personal services, or doing something other than payment of money").  As to the

14  conversion claim, the court held that § 580d applied only *after* a nonjudicial foreclosure and

15  therefore, at the time the plaintiff made the payment to Wells Fargo, she was not protected by that

16  provision.  *Id.* at *6.  The court concluded, "[a]ccepting payment a Plaintiff owes on a delinquent

17  mortgage cannot be the basis of a conversion claim against a lender."  *Id.*

18         In *Auerbach*, the borrowers asserted a fraud claim based on the allegation that they continued

19  to make payments on a note secured by a seriously undervalued property in return for the lender's

20  promise to negotiate in good faith to modify the loan. 74 Cal. App. 4th at 1184-1185.  According to

21  the plaintiffs, these payments were sufficient to show reliance damages because there was a non-

22  recourse agreement between the borrowers and the lenders under which the only remedy available to

23

24         [4]Section 580d provides, in relevant part, as follows:

25         No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or
26         mortgage upon real property or an estate for years therein hereafter executed in any case in
           which the real property or estate for years therein has been sold by the mortgagee or trustee
           under power of sale contained in the mortgage or deed of trust.
27

28  Cal. Civ. Code § 580d.

United States District Court

For the Northern District of California

the lender was foreclosure.  *Id*. at 1187.  Thus, the borrowers could not have been compelled to continue making payments on the debt and could have simply walked away, thereby giving rise to the consideration that ordinarily is lacking when a party makes payments on a preexisting debt.  *Id*. at 1186-1187.  The court rejected this argument, however, based on evidence that came out at trial that the non-recourse agreement had been extinguished when the property at issue was conveyed from the individual plaintiffs to their family trust.  *Id*.  In reaching this conclusion, the court expressly declined to decide "whether a lender's false promises made to induce nonrecourse borrowers to continue making loan payments can ever support a claim of fraud."  *Id*. at 1187.

### 3.    Application to the Facts

In their complaint, Plaintiffs allege that Defendant breached its contract with them by failing to provide Plaintiffs with a "meaningful opportunity to retain their home."  In their Opposition to the Motion, they suggest an additional theory in support of this claim, namely, that the breach arose from Wells Fargo's sale of their home while the Agreement was still in effect.  The Court concludes that Plaintiffs fail to state a claim under either theory.

First, Plaintiffs fail to point to any specific provision in the Special Forbearance Agreement that promises Plaintiffs a meaningful opportunity to retain their home.  To the contrary, in this case, as in *Smith*, the Agreement expressly states that the "lender is under no obligation to enter into any further agreement," and that "[a]ll of the provisions of the Note and Security Instrument, except as herein provided, shall remain in full force and effect."  FAC, Ex. A.  In addition, both the Agreement and the Cover Letter state that approval of a request for loan modification is based on "investor guidelines."  *Id*.  Because the language of the Agreement is unambiguous in this respect, the Court concludes that Plaintiffs' breach of contract claim fails, as a matter of law, to the extent that it is based on the theory that Defendant was required to provide a meaningful opportunity for Plaintiffs to modify their loan.

The Court also rejects Plaintiffs' claim to the extent that it is based on the theory that Wells Fargo breached the contract by foreclosing *before* the termination of the Agreement, although this is a more difficult question.  In reaching this conclusion, the Court must look beyond *Smith*, because in that case, it was undisputed that the foreclosure sale did not occur until *after* the forbearance

agreement was completed.   Similarly, *Mehta* (which Defendant asserts compels dismissal of Plaintiffs' breach of contract claim) offers little guidance on this question because the allegation in that case was simply that Wells Fargo promised to delay the sale in return for the provision of some documents.  Thus, the question of *when* the agreement terminated was not an issue in that case.  Nor does that case offer any guidance as to whether Wells Fargo had an obligation to refund any of Plaintiffs' payments if it decided to terminate the Agreement before the end of February for reasons other than Plaintiffs' noncompliance.

Turning to the terms of the Special Forbearance Agreement, the Court finds that the Agreement is, on its face, ambiguous.  In particular, it states that Plaintiffs' payments shall be made "in consideration of extending forbearance *for a period of time*" but does not specify *what* period of time the forbearance will be delayed; nor does the Agreement state whether "extending forbearance" means delaying the sale only or rather, whether it stops the clock as to all related proceedings, such as recording a notice of trustee's sale.  FAC, EX. B.  The Cover Letter that accompanies the Agreement is similarly unclear, simply stating that Wells Fargo will instruct its foreclosure counsel to "suspend foreclosure proceedings once the initial installment has been received, and to continue to suspend the action as long as you keep to the terms of the Agreement."  FAC, Ex. A.  Therefore, the Court rejects Wells Fargo's contentions that, as a matter of law, 1) it "delivered on" its promise to extend forbearance by delaying the foreclosure sale from January 4 to February 19, 2009; and 2) "the Agreement did not preclude Wells Fargo from recording the Notice of Trustee's Sale, just from conducting the foreclosure sale."  *See* Reply at 6.  Rather, it cannot be determined on the face of the complaint whether Wells Fargo breached the agreement by foreclosing before the end of the month in which Plaintiffs' last installment payment was made.

Further, the Court rejects Wells Fargo's assertion that no claim for breach of contract can be stated because it had sole discretion to terminate the Agreement at any time without notice to Plaintiffs.  It is true that the termination provision allows Wells Fargo to foreclose on Plaintiffs' home at any time, without notifying Plaintiffs (either before *or* after the sale), even if Plaintiffs have complied with all the requirements of the Agreement.  Wells Fargo also is correct that there is no express language in the Agreement requiring it to refund any payment that has already been made,

United States District Court

For the Northern District of California

1   regardless of the circumstances under which it terminated the Agreement.  The conclusion to be

2   drawn, however, is not that Wells Fargo did not breach the Agreement but rather, that the Agreement

3   gives Wells Fargo such unfettered discretion in connection with its purported contract obligations

4   that it is illusory unless the Court implies a covenant of good faith and fair dealing into it.  *See*

5   *Storek & Storek, Inc. v. Citicorp. Real Estate, Inc.,* 100 Cal.App. 4th 44, 57 (2002).  The Court

6   cannot say, as a matter of law, that Wells Fargo did not breached the covenant of good faith and fair

7   dealing by foreclosing on Plaintiffs' home while the Agreement, arguably, was still in effect without

8   at least refunding a portion of the February payment.

9           This does not end the inquiry, however, because Plaintiffs must allege not only a breach

10  based on Wells Fargo's conduct but also resulting damages.  Defendant asserts that Plaintiffs have

11  failed to allege any cognizable damages based on its sale of Plaintiffs' property, even if they are

12  correct that the sale was premature under the Agreement.   Except as to the March payment, which

13  falls outside of the contract in any event, the Court concludes that Wells Fargo is correct.  As noted

14  above, a claim for damages must be supported by consideration, but here, Plaintiffs request as

15  damages money which was already owed to Wells Fargo, even though it was paid by Plaintiffs to

16  comply with the Special Forbearance Agreement.  It is well established that where the money paid

17  under an agreement was already owed under a prior agreement, it is not consideration and cannot

18  support a claim for damages.  *See Newgent*, 2010 WL 761236, at * 1 (S.D. Cal. March 2, 2010).  In

19  reaching this conclusion, the Court agrees with the court in *Newgent* that even if Wells Fargo is

20  barred from seeking a deficiency judgment against plaintiffs *after* foreclosure under Cal. Civ. Code

21  § 580d, there is no authority that this provision excuses a borrower from making payments under a

22  deed of trust *prior* to foreclosure.[5]  Thus, Plaintiffs' payments to Wells Fargo under the Agreement

23  are not consideration to the extent they were made before Defendant sold their property in

24

25

26

27

28          [5]*Auerbach* does not stand for a contrary result because in that case, the court declined to decide
    this question.  *See*  74 Cal. App. 4th at 1187.

foreclosure and cannot support a claim for damages on a breach of contract claim. [6] Plaintiffs also fail to establish that they were damaged by the alleged breach of contract to the extent that they do not dispute that they were permitted to remain in the house (where they continue to live) despite the foreclosure sale. Therefore, the Court concludes that Plaintiffs fail to state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing.

### C.   Rescission/Restitution Claim

Defendants assert that Plaintiffs' claim for rescission/restitution fails because: 1) these are remedies and not free-standing claims; 2) to the extent the claim is based on alleged misrepresentations, these are not alleged with sufficient specificity to satisfy Rule 9(b); and 3) Plaintiffs could not have reasonably relied on any representations by Wells Fargo concerning any forbearance-to-modification program in light of the clear language in the Agreement indicating that the Agreement was *not* such a program. The Court concludes that the claim, as alleged, fails as a matter of law except as to the March payment.

As a preliminary matter, the Court addresses Wells Fargo's contention that there is no stand-alone claim for either rescission or restitution. With respect to the former, Wells Fargo appears to be correct. *See Nakash v. Superior Court*, 196 Cal. App. 3d 59, 70 (1987)(stating that "[r]escission is not a cause of action; it is a remedy"). Wells Fargo is incorrect as to restitution. Wells Fargo states that "the remedy of restitution, synonymous with unjust enrichment, is . . . not a stand-alone cause of action," Motion at 11 (citing *Robinson v. HSBC BANK USA*, 2010 WL 3155833 (N.D. Cal. Aug. 9, 2010)). In *Robinson*, the court stated that "California does not recognize a stand-alone cause of action for unjust enrichment." *Id.* at *7 (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 387

---

[6]The Court notes that Wells Fargo's argument that Plaintiffs have suffered no cognizable damages also may have implications for the validity of the contract, to the extent that a contract that is not supported by consideration by the borrowers (because they have simply promised to pay money they already owed) is likely unenforceable. However, Wells Fargo has not argued that the Forbearance Agreement is unenforceable on this basis and, as Plaintiffs point out, lack of consideration is an affirmative defense. Further, the Agreement in this case expressly recited consideration, which is considered prima facie evidence of forbearance. Therefore, the Court declines to dismiss Plaintiffs' breach of contract claims on this ground and does not decide whether the Agreement is unenforceable for lack of consideration. The Court notes that Plaintiffs have neither alleged in the complaint nor argued in their Opposition to the Motion that the Agreement is enforceable under a theory of promissory estoppel.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  (2004)).  In *McBride*, in turn, the court explained that "unjust enrichment" is not a cause of action, or

2  even a remedy, but rather, a principal that underlies various legal doctrines and remedies.  123 Cal.

3  App. 4th at 387.  The court went on, however, to address whether the plaintiff in that case could

4  state a claim for restitution.  *Id.*

5          The confusion as to whether California law recognizes a claim for restitution was

6  acknowledged in *Nordberg v. Trilegiant Corp.*, in which the court summarized the issue as follows:

7          The state and the federal courts appear to be unclear whether in California a court may
        recognize a claim for "unjust enrichment" as a separate cause of action. *See McBride v.*
8      *Boughton*, 123 Cal.App.4th 379, 387, 20 Cal.Rptr.3d 115 (2004) ("unjust enrichment is not a
        cause of action or even a remedy, but rather a general principle underlying various legal
9      doctrines and remedies"); *Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal.App.4th 1439, 1448, 9
        Cal.Rptr.2d 774 (1992) ("the phrase '[u]njust [e]nrichment' does not describe a theory of
10     recovery, but an effect: the failure to make restitution under circumstances where it is
        equitable to do so"); *Enreach Tech, Inc. v. Embedded Internet Solutions*, 403 F.Supp.2d 968,
11     976 (N.D.Cal.2005) (Wilken, J.) (citing *McBride*, 123 Cal.App.4th at 387, 20 Cal.Rptr.3d
        115) ("unjust enrichment is not a valid cause of action in California."); Cf. *Hirsch v. Bank of*
12     *America*, 107 Cal.App.4th 708, 722, 132 Cal.Rptr.2d 220 (2003) (reversing the lower court's
        dismissal of plaintiff's unjust enrichment claim upon finding that appellants stated a valid
13     cause of action for unjust enrichment); see also *Ghirardo v. Antonioli*, 14 Cal.4th 39, 43-44,
        57 Cal.Rptr.2d 687, 924 P.2d 996 (1996); *Villager Franchise Sys. v. Dhami, Dhami & Virk*,
14     CV-F-04-6393, 2006 U.S. Dist. LEXIS 6114 (E.D.Cal.2006) ("California
        law recognizes a cause of action for unjust enrichment") (citing *Ghirardo v. Antonioli*, 14
15     Cal.4th 39, 51, 57 Cal.Rptr.2d 687, 924 P.2d 996 (1996)); *Gerlinger v. Amazon.Com, Inc.*,
        311 F.Supp.2d 838, 856 (N.D.Cal.2004) (Patel, J.) ("[u]nder California law, unjust
16     enrichment is an action in quasi-contract") (citing *Paracor Fin. v. Gen. Elec. Capital Corp.*,
        96 F.3d 1151, 1167 (9th Cir.1996)); *Western Pac. R. Corp. v. Western Pac. R. Co.*, 206 F.2d
17     495, 498 (9th Cir.1953) ("it is of course true that the California courts, in common with
        authorities generally, recognize a cause of action based on unjust enrichment").

18
19     Notwithstanding the apparent confusion over the viability of a cause of action for unjust
        enrichment, for the most part, courts finding that California does not allow an "unjust
20     enrichment" cause of action have made essentially semantic arguments-focusing on the
        interrelationship between the legal doctrine of unjust enrichment and the legal remedy of
        restitution. See, e.g., *Lauriedale*, 7 Cal.App.4th at 1448, 9 Cal.Rptr.2d 774; *McBride*, 123
21     Cal.App.4th at 387, 20 Cal.Rptr.3d 115.

22     Moreover, in both *McBride* and *Lauriedale*, cases upon which defendants strongly rely, the
        courts found that although labeled "unjust enrichment," the causes of action could be
23     understood as claims for restitution.

24   445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006); *see also Walters v. Fidelity Mortgage of California*,

25  2010 WL 1493132 (E.D. Cal. April 14, 2010) ("[c]ontrary to [defendant's] . . .argument, California

26

27

28

United States District Court

For the Northern District of California

does recognize a claim for restitution"). This Court agrees with the courts in *Nordberg* and *Walters* that a claim for restitution exists under California law.[7]

To state a claim for restitution, a plaintiff "must plead 'receipt of a benefit and the unjust retention of the benefit at the expense of another.'" *Walters*, 2010 WL 1493132 at * 12 (quoting *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000)). "Even when a person has received a benefit from another, he is required to make restitution 'only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.'" *Ghirardo v. Antonioli*, 14 Cal.4th 39, 51 (1996)(quoting Rest., Restitution, § 1, com. c, p. 13.). In *McBride*, the court explained that "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." 123 Cal. App. 4th at 388. To prevail on a claim for restitution, a plaintiff need not establish bad faith on the part of the defendant, so long as the recipient of the funds was not entitled to the funds. *See Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000); *Yang v. Home Loan Funding Inc.,* 2010 WL 670958 (E.D. Cal. Feb. 22, 2010 (denying motion to dismiss unjust enrichment claim against mortgage lender based on allegation that lender had profited from payments to which it was not entitled under loan documents).

Here, Plaintiffs' theory in support of their restitution claim, as currently alleged, is that Wells Fargo retained payments to which it was not entitled under the Agreement because it induced Plaintiffs to enter into the Agreement based on misrepresentations that caused Plaintiffs to believe that they were being offered a meaningful opportunity to modify their loan based on Wells Fargo's prior review of their financial information. Even if Plaintiffs were able to prove their allegations, the Court concludes that Plaintiffs' restitution claim fails, at least as to the payments that were made *prior* to the foreclosure, because Plaintiffs owed this money to Wells Fargo under the deed of trust. *See* Cal. Civ. Code § 2224 ("One who gains a thing by fraud, accident, mistake, undue influence, the

---

[7]The Court notes that even if there is disagreement as to whether there is a claim for "restitution," the disagreement turns in large part on the label that is attached to the claim on which restitution is sought; while some courts refer to claims for "restitution," others label these claims according to the underlying theory attached to the claim. Whatever the label, the task for this Court is to determine whether Plaintiffs have stated a claim in support of their request for restitution.

violation of a trust, or other wrongful act, is, *unless he or she has some other and better right thereto*, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it") (emphasis added).  Under these circumstances, Plaintiffs have failed to allege that Wells Fargo has *unjustly* retained these funds, as required to state a claim.  Plaintiffs may, however, be able to establish a right to restitution based on Wells Fargo's retention of the March payment to the extent that: 1) it was not required under the Agreement and 2) it was made *after* Wells Fargo had already foreclosed and therefore, under Cal. Civ. Code § 580d, Wells Fargo was not entitled to seek any further funds from Plaintiffs at the time that payment was made.  Accordingly, Plaintiffs' claim for restitution survives Defendant's Motion as to the March payment only.

**D.    Rosenthal Act Claim**

Defendant seeks dismissal of Plaintiffs' claim under the Rosenthal Act on the basis that it is not a "debt collector" and the conduct alleged is not "debt collection" under the Rosenthal Act. Defendant further asserts that the claim fails because the alleged false or misleading statements on which Plaintiffs' claim is based do not meet the heightened pleading requirements of Rule 9(b).  The Court rejects these arguments.

The Rosenthal Act is intended to "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1 (legislative findings and purpose). In addition to setting forth its own standards governing debt-collection practices, the Rosenthal Act also provides that, with limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the federal Fair Debt Collection Practices Act ("FDCPA"). Cal. Civ. Code § 1788.17.   One of the FDCPA provisions that is incorporated into the Rosenthal Act is the bar prohibiting debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," found in Section 1692e of the federal FDCPA.  *See* 15 U.S.C. § 1692e.

Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).  "Debt" is defined as "money, property or their equivalent which is due

United States District Court

For the Northern District of California

or owing or alleged to be due or owing from a natural person to another person."  Cal. Civ. Code § 1788.2(d).  As a number of courts have recognized, the definition of "debt collector" is broader under the Rosenthal Act than it is under the FDCPA, as the latter excludes creditors collecting on their own debts.  *See Herrera v. LCS Financial Services Corp.*, 2009 WL 5062192, at *2  (N.D. Cal., Dec. 22, 2009) (Henderson, J.) (noting that plaintiff brought a claim under the Rosenthal Act against both defendants but asserted federal debt collection practices claim against only one defendant because "[t]he federal definition [of debt collectors] excludes creditors collecting on their own debts, 15 U.S.C. § 1692a(6), an exclusion that does not appear in the state statute, Cal. Civ. Code § 1788.2(c)"); *Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal.  2008) ("The definition of 'debt collector' in the state statute is broader than that contained in the FDCPA, however").  Thus, a mortgage servicer may be a "debt collector" under the Rosenthal Act even if it is the original lender, whereas, such an entity would be excluded from the definition of debt collector under the federal act.  *See Herrera*. 2009 WL 5062192, at *2.[8]

Numerous courts have held that the mere allegation that a defendant foreclosed on a deed of trust does not implicate the Rosenthal Act.  *See, e.g., Sipe v. Countrywidebank*, 2010 WL 2773253 (E. D. Cal. July 13, 2010)("the law is clear that foreclosing on a deed of trust does not invoke the statutory protections of the [Rosenthal Act]"); *Pittman v. Barclay Capital Real Estate, Inc.*, 2009 WL 1108889 (S.D. Cal., April 24, 2009) (same); *Ines v.Countrywide Home Loans, Inc.*, 2008 WL 4791863 (S.D. Cal. Nov. 3, 2008) (same).  Where the claim arises out of debt collection activities "beyond the scope of the ordinary foreclosure process," however, a remedy may be available under the Rosenthal Act.  *Walters v. Fidelity Mortgage of California, Inc.*, 2010 WL 3069341, at *15 (E.D.

---

[8]Defendants cite to several cases in which district courts appear to have held, categorically, that under the Rosenthal Act a mortgage loan does not qualify as "debt."  *See, e.g., Pittman v. Barclays Capital Real Estate, Inc.*, 2009 WL 1108889 (April 24, 2009 S.D. Cal.) (plaintiff "fails to state a claim under the Rosenthal Act because a residential mortgage loan does not qualify as "debt" under the statute").  Similarly, the undersigned stated in *Glover v. Fremont Investment* that a loan servicer is not a "debt collector" under either the FDCPA or the Rosenthal Act.  *See* 2009 WL 5114001 (N.D. Cal. December 18, 2009).  Having carefully reviewed the cases cited by Defendant on this question, the Court concludes that these decisions are incorrect to the extent they suggest that collection on a mortgage debt can *never* give rise to a claim under the Rosenthal Act, or that a loan service can *never* be a debt collector under that statute.  Rather, in light of the broad definition of "debt" and "debt collector" under the Rosenthal Act, the Court concludes that the proper inquiry should focus on the alleged conduct of the entity.

**United States District Court**
For the Northern District of California

1   Cal. Aug. 4, 2010) (holding that mortgage servicer that regularly billed plaintiff and collected

2   payments on her mortgage debt was a "debt collector" under the Rosenthal Act and that the plaintiff

3   stated a claim under the Rosenthal Act based on allegation that mortgage servicer engaged in pattern

4   of improper conduct that ultimately resulted in foreclosure).

5          Because Plaintiffs' claim under the Rosenthal Act relies on an alleged violation of the

6   FDCPA, the standard that applies to Plaintiffs' Rosenthal Act claim is the same as the standard that

7   applies under the FDCPA.  *See Herrera*, 2009 WL 5062192, at *2 (N.D. Cal., Dec. 22, 2009).

8   Under the FDCPA, claims are assessed from the perspective of the "least sophisticated debtor." *Id.*

9   at *4 (citing *Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir.1989)). "If the least

10  sophisticated debtor would 'likely be misled' by a communication from a debt collector, the debt

11  collector has violated the Act." *Id.* (citing *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934

12  (9th Cir.2007) (quoting *Swanson*, 869 F.2d at 1225)).  The standard is objective and is aimed at

13  ensuring that the FDCPA "protects all consumers, the gullible as well as the shrewd . . . the ignorant,

14  the unthinking and the credulous." *Id.* (citing *Clark v. Capital Credit & Collection Servs.*, 460 F.3d

15  1162, 1171 (9th Cir.2006) (internal citation omitted)). "The least sophisticated debtor is a 'lower'

16  standard 'than simply examining whether particular language would deceive or mislead a reasonable

17  debtor.'" *Id.* (citing *Terran v. Kaplan*, 109 F.3d 1428, 1431-32 (9th Cir.1997) (quoting *Swanson*,

18  869 F.2d at 1227)).  Applying these standards, the court in *Herrera* found that the plaintiffs in that

19  case had stated a claim under the Rosenthal Act against a mortgage servicer on the basis of

20  allegations that certain communications sent in connection with her mortgage  were misleading and

21  deceptive.  *Id.*

22         Here, Defendant asserts that it is not a "debt collector" under the Rosenthal Act and that in

23  addition, the conduct of which Plaintiffs complain is not "debt collection" that is actionable under

24  the Act.  The first contention is incorrect in light of the broad definition of "debt collector" that is

25  contained in the Rosenthal Act.  The Court also rejects the second contention.  While courts appear

26  to agree that the process of foreclosure is not actionable as "debt collection" under the Rosenthal

27  Act, the allegation here is based not on the mere act of foreclosure but rather, on allegedly deceptive

28  statements contained in the Offer Letter relating to the Forbearance Agreement, which were "beyond

1   the scope of the ordinary foreclosure process."  The Court cannot say, as a matter of law, that the

2   statements made in the Offer Letter would not have been misleading to the least sophisticated buyer

3   in light of: 1) the words "good news" at the beginning of the letter; 2)  the language in the letter

4   indicating that the Agreement was being offered based on a review of the recipient's financial

5   information; 3) the statement that foreclosure counsel would be instructed to delay foreclosure

6   proceedings as long as the recipients made timely payments under the Agreement; and 4) the use of

7   the words "trial period" to describe the Agreement.

8          Finally, the Court finds that Plaintiffs' allegations are sufficient to satisfy Rule 9(b) to the

9   extent that the statements that are alleged to have been misleading are contained in a letter that is not

10  only identified but also attached to Plaintiffs' complaint.  Thus, the when, where, and how of

11  Plaintiffs' claim are clearly identified in the complaint. Therefore, the Court concludes that Plaintiffs

12  have stated a claim under the Rosenthal Act.

13         **E.    UCL Claim**

14         Defendant argues that Plaintiffs' unfair competition claim under Cal. Bus. & Prof. Code §§

15  17200 *et seq*. fails as a matter of law because Plaintiffs lack standing under the UCL and even if they

16  had standing, their allegations are insufficient to support such a claim.  The Court finds that

17  Plaintiffs  have standing based on their payments to Wells Fargo and that Plaintiffs state a claim

18  based on its allegations of unfair, unlawful and fraudulent business practices.

19              **1.    Standing**

20         A claim for unfair competition under California's UCL law may be brought "by a person

21  who has suffered injury in fact and has lost money or property as a result of the unfair competition."

22  Cal. Bus. & Prof. Code § 17204.  Because the remedies available under the UCL are limited to

23  restitution and injunctive relief, however, California courts have held that only money or property

24  that is subject to restitution satisfies the UCL's standing requirement.  *Citizens of Humanity, LLC v.*

25  *Costco Wholesale Corp.*, 171 Cal.App.4th 1, 22 (2009).   Defendant asserts that as a result, Plaintiffs

26  here do not have standing to assert a UCL claim because their restitution claim fails.  The Court

27  disagrees.

28

1   As two judge in this district have pointed out, in the cases on which Wells Fargo relies the

2   plaintiffs "had not actually lost money or property of any sort." *Swain v. CACH, LLC*, 2009 WL

3   6325531 (N.D.Cal., July 16, 2009)(Ware, J.) (citing *Fulford v. Logitech, Inc.,* 2009 WL 1299088

4   (N.D. Cal. May 8, 2009) (Chesney, J.) (addressing cases stating that UCL standing requires the type

5   of loss that can be remedied by restitution, including *Buckland v. Threshold Enters. Ltd.*, 155

6   Cal.App.4th 798, 817, 66 Cal.Rptr.3d 543 (2007) and *Walker v. Geico Gen. Ins. Co*., 558 F.3d 1025

7   (9th Cir. 2009)).  Thus, these cases simply require that under the UCL, a plaintiff must suffer  "loss

8   of income," "loss of financial resources" or "economic loss."  *Id*.   Because Plaintiffs in this case

9   made payments to Wells Fargo as a result of the business practice that is the subject of their UCL

10   claim, the Court concludes that they have standing to assert such a claim.

11      **1.**  **Unlawful Business Practices**

12     Under the UCL, a plaintiff may establish a violation on the basis of an unlawful business

13   practice.  Cal. Bus. & Prof. Code § 17200.  To state a cause of action based on an unlawful business

14   act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some

15   underlying law.  *People v. McKale*, 25 Cal.3d 626, 635 (1979).  For the reasons stated above, the

16   Court concludes that Plaintiffs have stated a claim under the Rosenthal Act and therefore, also state

17   a claim under the UCL to the extent that claim is based on Defendant's alleged violation of the

18   Rosenthal Act.

19      **2.**  **Fraudulent Business Practices**

20     A "fraudulent" business act or practice is one in which members of the public are likely to be

21   deceived.  *Weinstat v. Dentsply Intern., Inc.,* 180 Cal.App. 4th 1213, 1223 n.8  (2010)(citations

22   omitted). "'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but

23   only requires a showing members of the public 'are likely to be deceived.' " *Olsen v. Breeze*, 48

24   Cal.App.4th 608, 618 (1996).  Plaintiffs allege that members of the public are likely to be deceived

25   by the Cover Letter and Agreement that Wells Fargo sent to them.  As discussed above in

26   connection with Plaintiffs' Rosenthal Act claim, the Court cannot say at this stage of the case that

27   Plaintiffs will not be able to prevail on this claim.

28

**United States District Court**
For the Northern District of California

### 3.    Unfair Business Practice

Under California law, "[t]he test of whether a business practice is unfair 'involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718 (2001).  "An 'unfair' business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* (citations omitted) (listing examples of unfair business practices, including "placing unlawful or unenforceable terms in a form contract"). Plaintiffs allege that Wells Fargo's Cover Letter and Agreement were misleading to the extent that they appeared to be consistent with federal policy under the Home Affordability Modification Program ("HAMP") when in fact, they were merely an attempt to circumvent the prohibition on seeking deficiency judgments  after nonjudicial foreclosures that is embodied in California law.  The Court cannot say that these allegations fail as a matter of law.

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion is GRANTED in part and DENIED in part as follows: 1) the Motion is GRANTED as to Plaintiffs' claim for breach of contract/breach of the implied covenant of good faith and fair dealing, which is dismissed for failure to state a claim. Because the Court concludes that Plaintiffs cannot state a claim by amending their complaint, this claim is dismissed without leave to amend; 2) the Motion is GRANTED as to Plaintiffs' claim for restitution/rescission except as to Plaintiffs' March payment, as to which Plaintiffs state a claim. Otherwise, the claim is dismissed without leave to amend; 3) the Motion is DENIED as to Plaintiffs' claim under the Rosenthal Act; and 4) the Motion is DENIED as to Plaintiffs' unfair competition claim under Cal. Bus. & Prof. Code §§ 17200 *et seq.*

IT IS SO ORDERED.

Dated: January 3, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge

32