Steve W. Berman (*Pro Hac Vice*)
Thomas E. Loeser (Cal. Bar No. 202724)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

Peter B. Fredman (Cal. State Bar No. 189097)
**LAW OFFICE OF PETER FREDMAN**
125 University Ave, Suite 102
Berkeley, CA 94710
Telephone: (510) 868-2626
Facsimile: (510) 868-2627
peter@peterfredmanlaw.com

David Pivtorak (State Bar No. 255943)
**ATTORNEY AT LAW**
50 Francisco St., Suite 450
San Francisco, CA 94133
Telephone (415) 484-3009
Facsimile: (877) 748-4529
pivtoraklaw@gmail.com

Attorney for Plaintiffs,
GUSTAVO REYES and MARIA TERESA GUERRERO,
individually, and on behalf of others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO REYES and MARIA TERESA GUERRERO, husband and wife, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a national bank; and DOES 1-100, inclusive,<br><br>Defendants. | Case No. C 10-01667 JCS<br><br>**CLASS ACTION**<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES AND RESTITUTION<br>(1) BREACH OF CONTRACT (COVENANT OF GOOD FAITH AND FAIR DEALING)<br>(2) RESCISSION AND RESTITUTION (CAL. CIVIL CODE §§ 1688 *ET SEQ*)<br>(3) UNFAIR DEBT COLLECTION PRACTICES<br>(4) UNFAIR COMPETITION LAW (CAL.BUS. & PROF. CODE §§ 17200 *ET SEQ*)<br><br>**JURY TRIAL DEMANDED** |

---
1
---
Second Amended Complaint

Plaintiffs Gustavo Reyes and Maria Teresa Guerrero, by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against the above named Defendants, demand a trial by jury, and complain as follows:

## INTRODUCTION

1. This class action lawsuit seeks to redress and remedy Wells Fargo's recent practice of extracting payments from defaulted residential mortgage customers by falsely promising them the opportunity to retain their homes through an illusory forbearance-to-modification program.

2. After providing their financial information to Wells Fargo's loss mitigation department, said mortgage customers, including Plaintiffs, were sent form letters offering them "good news" in the form of the "opportunity to retain [their] home … [b]ased on the financial information [they] provided". Enclosed were "Special Forbearance Agreement[s]" specifying a three month payment term at a modified payment. The materials explained this as "a trial period showing you can make regular monthly payments".

3. These forbearance-to-modification offer packages were designed to give the impression that the customers are being put into a trial modification program to assess their willingness and ability to make the reduced payment when, in fact, based on the information already available to it, Wells Fargo knew or should have known that it was not prepared to permanently modify their mortgages to the forbearance payment nor to any payment that the borrowers could reasonably afford.

4. In Plaintiffs' case, they were foreclosed on during the term of the Special Forbearance Agreement while timely making their payments thereon.

5. Plaintiffs contend that the forbearance-to-modification program was essentially a sham; designed to generate revenue from non-performing mortgage loans without providing customers with the promised consideration of an opportunity to retain their homes. They seek restitution of the forbearance payments on behalf of themselves and the class of persons similarly situated based on claims for breach of contract, breach of the covenant of good faith and fair dealing in the contract, rescission, unfair debt collection practices, and unfair competition law.

**PARTIES**

6. Plaintiffs, Gustavo Reyes and Maria Teresa Guerrero ("Plaintiffs"), are residents of Alameda County, California at the real property located at 1321 Grove Way, Hayward, CA 94541 (the "Property").

7. Defendant, Wells Fargo Home Mortgage, is a division of Wells Fargo Bank, N.A. ("Wells Fargo"), which does business throughout California and has its principal place of business in San Francisco, California.

8. Plaintiffs are not aware of the true names and capacities of the defendants sued as Does 1-100, inclusive, and therefore sue these defendants by such fictitious names. Each of these fictitiously named defendants is responsible in some manner for the activities alleged in this Complaint. Plaintiffs will amend this Complaint to add the true names of the fictitiously named defendants once they are discovered.

9. Plaintiffs allege on information and belief that at all times relevant hereto each of the defendants, including each DOE, was the agent, principle, servant, master, employee, employer, joint-venturer, partner, successor-in-interest, and/or co-conspirator of each other defendant and was at all said times acting in the full course and scope of said agency, service, employment, joint venture, concert of action, partnership, successorship, or conspiracy, and that each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint.

**FACTS**

10. Plaintiffs purchased the Property in November, 2003 for approximately $336,000 with a first mortgage for $268,000.

11. On or about September 16, 2005, Wells Fargo refinanced the Property, providing Plaintiffs with Wells Fargo Loan No. xxxxxxxx0713 in the amount of $452,000, and taking a deed of trust (DOT) as security.

12. Plaintiffs used the money the received from the refinance of the property to make valuable improvements on the Property. They paid Wells Fargo on time every month to the best of their ability.

_____3_____
Second Amended Complaint

13. By June of 2009, however, Plaintiffs had suffered economic hardships that depleted their savings and prevented them from making full mortgage payments, and the value of the Property had plummeted to less than half of the subject mortgage. They called Wells Fargo to request a loan modification due to insufficient income, providing all information and documentation that Wells Fargo requested. Wells Fargo denied the request.

14. On or about September 10, 2009, Wells Fargo recorded and served a Notice of Default And Election to Sell ("NOD") the Property pursuant to section 2924 *et seq* of the California Civil Code ("Section 2924").

15. By recording and serving the NOD, Wells Fargo elected to proceed with non-judicial foreclosure of the Property as its exclusive remedy for the default

16. Plaintiffs continued to seek the opportunity to retain their home through loan modification or other relief by contacting the Wells Fargo loss mitigation department via the 800 number that Wells Fargo directs such customers too. During those calls, Plaintiffs would provide their financial information as requested by Wells Fargo.

17. On December 1, 2009, Plaintiffs received from Wells Fargo the letter attached hereto as Exhibit A (the "Offer Letter"), which enclosed the Special Forbearance Agreement attached hereto as Exhibit B (the "Agreement").

18. The Offer Letter read in relevant part:

> <u>We have good news</u> about the above referenced loan. Our goal is simple. <u>We want to ensure you have every opportunity to retain your home.</u> Based on our telephone conversation and the financial information you provided, we would like to offer you a Special Forbearance Agreement ("Agreement").
> ***
> …This is … a trial period showing you can make regular monthly payments …

Exhibit A, (emphasis added).

19. In reliance on the Offer Letter, Plaintiffs executed and returned the Agreement, and timely made the monthly payments as required there under. Specifically, Plaintiffs paid the monthly payment for December-2009, January-2010, February-2010, and March-2010 (before learning they had been foreclosed on in February). Wells Fargo accepted and cashed their checks.

_____4_____
Second Amended Complaint

20. On December 11, 2009, Wells Fargo recorded a Notice of Trustee Sale (NOS).

21. On February 9, 2010, after receiving the third and final payment due under the Agreement, Wells Fargo mailed Plaintiffs a letter declining the modification.

22. On February 19, 2010, Wells Fargo caused the Property to be sold by non-judicial foreclosure.

## **CLASS ALLEGATIONS**

23. This class action is brought pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure by the individual named Plaintiffs on behalf of themselves and the following class:

> All California residential mortgage customers of Wells Fargo who received the above-described forbearance-to-modification offers from Wells Fargo, consisting of the Offer Letter and Agreement, in substantially the same form presented to Plaintiffs.

24. Plaintiffs do not know the exact size or identities of the proposed Class, since such information is in the control of defendants. Plaintiffs believe and allege, however, that the Class encompasses thousands of residential mortgage borrowers who are geographically dispersed throughout California. Therefore, the proposed class is so numerous that joinder of all members is impracticable.

25. Common questions of fact and law predominate over any questions affecting only individual members including, but not limited to, the following:

    a. whether the Special Forbearance Agreements were a valid and binding agreement and whether Wells Fargo had programs in place that constituted material performance of the Agreements;

    b. whether Wells Fargo's conduct with respect to the forbearance-to-modification packages subjects the agreements to rescission and restitution for failure of consideration under section 1688 of the California Civil Code;

    c. whether Wells Fargo's conduct with respect to the forbearance-to-modification packages constituted unfair debt collection practices;

    d. whether Wells Fargo's conduct with respect to the forbearance-to-modification packages violated the Unfair Competition Law (UCL) and, specifically, whether

the representations in the Offer Letter were material within the meaning of *In Re Tobacco II*.

26. This is a matter of important public policy because foreclosure avoidance, where possible, and the fair treatment of distressed borrowers are state and national policy priorities.

27. Plaintiffs' claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.

28. Plaintiffs will fairly and adequately represent the interests of the Class. They are committed to the vigorous prosecution of the Class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class action and foreclosure claims.

29. A class action is superior to other methods for the fast and efficient adjudication of this controversy and to avoid the risk of disparate and inconsistent rulings throughout the state. A class action regarding the issues in this case does not create any problems of manageability.

## 1ST CLAIM FOR RELIEF
**(Breach of Contract/Implied Covenant of Good Faith and Fair Dealing)**
**(Against Wells Fargo and Does)**

30. The preceding paragraphs are incorporated by reference.

31. Plaintiffs entered into an agreement with defendants whereby, in exchange for the specified monthly payments, defendants agreed to put them into a forbearance-to-modification program that would give them the opportunity to retain there home based on information previously provided to Wells Fargo and Plaintiffs' demonstration of a willingness and ability to make reduced monthly payments.

32. In every contract or agreement, including those at issue here, there is an implied promise of good faith and fair dealing, which means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. This covenant of good faith applies in particular here, where Wells Fargo drafted an adhesive agreement whereby it ostensibly retained for itself the unfettered discretion to avoid its obligations under the agreement. In such situations, the law reads a duty of good faith into Wells Fargo's exercise of such discretion in order that the agreement should not be rendered illusory.

33. Plaintiffs performed all their obligations under the agreement except to the extent that they were excused from performance.

34. Defendants breached the agreement AND totally failed to provide the consideration they promised there under. Specifically, the Agreement did not represent or provide Plaintiffs a meaningful opportunity to retain their home.

35. Plaintiffs were harmed as a result of the breach, and are entitled in the alternative to damages to terminate the agreement and recover their consideration paid under the Agreement (i.e. their forbearance payments) without formal rescission. *Richter v. Union Land Co.* (1900) 129 Cal. 367, 372-373; *Morrell v. Clark* (1951) 106 Cal.App.2d 198, 203.

WHEREFORE, Plaintiffs pray for judgment and relief as set forth below.

## 2ND CLAIM FOR RELIEF
### (Rescission and Restitution – Cal. Civil Code §§ 1688-1689 )
### (Against Wells Fargo and Does)

36. The preceding paragraphs are incorporated by reference.

37. **NOTICE OF RESCISSION:** In the alternative, Plaintiffs and Class, by service of this Class Action Complaint on Defendant Wells Fargo, hereby provide notice to Defendant, its subsidiaries and affiliates that the "Special Forbearance Agreements" described in this Complaint are subject to rescission and are hereby rescinded for the reasons set forth herein.

38. Section 1689(b) of the California Civil Code provides that a "party to a contract may rescind the contract … (1) [i]f the consent of the party rescinding … was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds … (2) [i]f the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds .... (4) [i]f the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause."

39. Plaintiffs are entitled to rescind the Agreement under Civil Code § 1689(b) and recover their consideration paid there under because their consent to the Agreement was given by mistake, and/or obtained through fraud exercised by Wells Fargo, and/or because the consideration promised by Wells Fargo failed in a material respect and through the fault of

Wells Fargo.

40. Specifically, Wells Fargo represented that it had reviewed (or re-reviewed) Plaintiffs' financial information, and on that basis was offering Plaintiffs access to a forbearance-to-modification program that would give them the opportunity to retain their home provided that they demonstrated an ability to make the reduced payment for the trial period. Wells Fargo made these representations with the intent of inducing Plaintiffs to enter into the Agreement in reliance thereon, and Plaintiffs did so rely in entering into the Agreement and making payments there under. In fact, Plaintiffs allege, Wells Fargo had made no review (or re-review) of Plaintiffs' financial information that triggered the offer, and it knew or should have known based on the information available at the time that it had no forbearance-to-modification program that would have given Plaintiffs the opportunity to retain their home, and that the reduced payment it was affirmatively proposing through the Offer as a "trial" payment was not a payment that it would be willing to accept on a long term basis.

41. Plaintiffs have retained no consideration that must be tendered back to Wells Fargo prior to rescission.

WHEREFORE, Plaintiffs pray for judgment and relief as set forth below.

### 3RD CLAIM FOR RELIEF
(Rosenthal Fair Debt Collection Practices Act – Cal. Civ. Code §§ 1788 *et seq.*)
(Against Wells Fargo and Does)

42. The preceding paragraphs are incorporated by reference.

43. Defendants were "debt collectors" engaging in "debt collection" practices under the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"). Cal. Civ. Code § 1788.2(c).

44. Defendants violated the Rosenthal Act by using false, deceptive, and misleading statements in connection with their collection of Plaintiffs' mortgage debt, as alleged herein. Cal. Civ. Code § 1788.17, incorporating 15 U.S.C.A. § 1692e.

45. The 1999 Amendment to the Rosenthal Act allows for class actions for violations to the same extent they are allowed under the federal Fair Debt Collection Practices Act ("FDCPA"). Cal. Civ. Code § 1788.17, incorporating 15 U.S.C.A. § 1692k; G*onzales v. Arrow*

*Financial Services, LLC* 233 F.R.D. 577, 581 (S.D.Cal.,2006).

WHEREFORE, Plaintiffs pray for judgment and relief as set forth below.

### 4TH CLAIM FOR RELIEF
### (Unfair Competition – Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
### (Against Wells Fargo and Does)

46. The preceding paragraphs are incorporated by reference.

47. California's Unfair Competition Law (the "UCL") defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. Cal. Bus. & Prof. Code §§ 17200 *et seq.* Defendants' conduct constitutes unfair competition under the UCL.

48. Defendants engaged in "fraudulent" business practices under the UCL because the forbearance-to-modification offer was intended and likely to mislead the public into believing that they could obtain an opportunity to retain their homes.  A true opportunity to retain their homes was "material" to Plaintiffs and the class within the meaning of *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 325.

49. Defendants engaged in "unlawful" business practices under the UCL based on the violation of the Rosenthal Act.

50. Defendants engaged in "unfair" business practices under the UCL because they violated the laws and underlying legislative policies designed to (a) prevent foreclosure, where possible, by requiring mortgage holders to engage in honest foreclosure prevention efforts, and to do so before recordation of a NOD (see Cal. Civil Code § 2923.5); (b) provide Californians with anti-deficiency protections that prevent mortgage holders from seizing other assets or monies of the borrowers after electing to sell the security in satisfaction of the mortgage debt (see C.C.P. § 580d, § 726); and (c) allow contracting parties to enjoy the benefits of their agreement after paying valuable consideration therefore.

51. Plaintiffs were injured in fact and lost money or property as a result of these unlawful, unfair, and fraudulent business practices.

WHEREFORE, Plaintiffs pray for judgment and relief as set forth below.

### **DEMAND FOR JURY TRIAL**

52. Plaintiffs request a jury trial on all claims so triable.

_____9_____
Second Amended Complaint

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment as follows:

A. An order certifying the Plaintiff Class, appointing the named Plaintiffs as the representatives of the Class, and appointing the law firms representing the named Plaintiffs as counsel for the Class;

B. An order rescinding and/or terminating the Special Forbearance Agreements;

C. Restitution of the consideration paid by Plaintiffs and the Class for the Special Forbearance Agreements;

D. Class wide statutory damages under the Rosenthal Act, as it incorporates the remedies provisions of the FDCPA, 15 U.S.C. § 1692k, pursuant to section 1788.17 of the California Civil Code. *See Gonzales v. Arrow Financial Services, LLC* 233 F.R.D. 577, 581 (S.D.Cal.,2006).

E. Such additional orders or judgments as may be necessary to prevent these practices and to restore to any person in interest any money or property which may have been acquired by means of the UCL violations;

F. Attorneys' fees, costs, and expenses pursuant to the Rosenthal Act, section 1021.5 of the Code of Civil Procedure, and pursuant to Paragraph 22 of the standard Plaintiff's Deed of Trust as rendered mutual by section 1717 of the California Civil Code; and

G. For such other and further relief as the Court may deem proper.

DATE: March 24, 2011                              LAW OFFICE OF PETER FREDMAN

By: /s/ Peter Fredman
Peter Fredman,
Attorney for Plaintiffs,
GUSTAVO REYES and MARIA
TERESA GUERRERO

# EXHIBIT A

**WELLS FARGO HOME MORTGAGE**
Return to:
P.O. Box 10368
Des Moines, IA 50306-0368

December 01, 2009

012428 1 MB 0.382   4428/012428/012105 047 03 AC03CM LM004 708

Gustavo Reyes
Maria T Guerrero
1321 Grove Way
Hayward CA  94541-2139

                                        Loan Number 708-0149340713
                                        Due Date:  06-01-09

We have good news about the above referenced loan. Our goal is simple. We want to ensure that you have every opportunity to retain your home. Based on our telephone conversation and the financial information you provided, we would like to offer you a Special Forbearance Agreement ("Agreement").

Currently, your loan is due for 6 installments, from June 01, 2009 through December 01, 2009. As agreed, you have promised to pay the amounts stated within the Agreement, the terms and conditions of which are outlined on page two. The Agreement must be signed and returned with the first installment. This is not a waiver of the accrued or future payments that become due, but a trial period showing you can make regular monthly payments. Please note that investor approval is still pending.

Upon successful completion of the Agreement, your loan will not be contractually current. Since the installments may be less than the total amount due, you may still have outstanding payments and fees. Any outstanding payments and fees will be reviewed for a loan modification. If approved for a loan modification, based on investor guidelines, this will satisfy the remaining past due payments on your loan and we will send you a loan modification agreement. An additional contribution may be required.

Any installments received will be applied to the delinquent payments on the loan. During this Agreement, installments are to be mailed to:
    Wells Fargo Home Mortgage
    3480 Stateview Blvd., MAC X7802-03H
    Fort Mill  SC  29715

If your loan is in foreclosure, we will instruct our foreclosure counsel to suspend foreclosure proceedings once the initial installment has been received, and to continue to suspend the action as long as you keep to the terms of the Agreement. Upon full reinstatement, we will instruct our foreclosure counsel to dismiss foreclosure proceedings and report to the credit bureaus accordingly.

During this period, we are requesting that you maintain contact with our office in order to establish acceptable arrangements for bringing your loan current. If you need additional assistance, please call us at (800) 416-1472, Monday through Thursday, 8 AM to 11 PM; Friday, 8 AM to 9:30 PM; or Saturday, 9 AM to 1 PM, Eastern Time.

Sincerely,
Borrower Counseling Services                           LM004 025 81B



# EXHIBIT B

SPECIAL FORBEARANCE AGREEMENT - TERMS AND CONDITIONS

1. Currently, your loan is due for 6 installments, from June 01, 2009 through December 01, 2009. The indebtedness of the referenced loan is in default and in consideration of extending forbearance for a period of time, it is necessary that you indicate your understanding and acceptance of the terms of the forbearance agreement by immediately signing and returning this agreement.
2. This Agreement temporarily accepts reduced installments or maintains regular monthly payments as outlined in section 5 below. Upon successful completion of the Agreement, your loan will not be contractually current. Since the installments may be less than the total amount due you may still have outstanding payments and fees. Any outstanding payments and fees will be reviewed for a loan modification. If approved for a loan modification, based on investor guidelines, this will satisfy the remaining past due payments on your loan and we will send you a loan modification agreement. An additional contribution may be required.
3. The lender is under no obligation to enter into any further agreement, and this Agreement shall not constitute a waiver of the lender's right to insist upon strict performance in the future.
4. All of the provisions of the Note and Security Instrument, except as herein provided, shall remain in full force and effect. Any breach of any provision of this Agreement or non-compliance with this Agreement, shall render the Agreement null and void. The lender, in its sole discretion and without further notice to you, may terminate this Agreement. If the Agreement is terminated, the lender may institute foreclosure proceedings according to the terms of the Note and Security Instrument. In the event of foreclosure, you may incur additional expenses of attorney's fees and foreclosure costs.
5. Each payment must be remitted according to the schedule below.

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|---|---|---|---|---|---|
| 01 | 12/01/09 | 1,307.57 | 02 | 01/01/10 | 1,307.57 |
| 03 | 02/01/10 | 1,307.57 | | | |

6. There is no "grace period" allowance in this Agreement. All installments must be received on or before the agreed due date and made strictly in accordance with section 5 above. If any installment is not received on or before the respective due date, the Agreement will be void and the total delinquency, including fees, will be due immediately.
7. The total amount indicated on each installment must be remitted. In the event the total amount due of each payment is not received, the Agreement will be rendered null and void.

By signing this Agreement, I hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I may have. This includes text messages, at no cost to me, and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone.

_[signature]_ 12/05/09    _[signature]_ 12/05/09
Mortgagor           Date    Co-mortgagor         Date
Loan Number 708/0149340713 12/05/09

We are required to notify you that if your loan is currently delinquent or in default, as your loan servicer, we will be attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge, and the loan was not reaffirmed in the bankruptcy case, we will only exercise its right as against the property and is not attempting any act to collect the discharge debt from you personally.

